UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | |
| STEPHANIE HENRY | § | Case No. 13-30519 |
| | § | Chapter 13 |
| Debtor. | § | |
| | § | |
| | § | |
| ———————————— | § | ———————————— |
| | § | |
| STEPHANIE HENRY, on behalf of herself | § | |
| and all others similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary No. 18-03154 |
| | § | |
| EDUCATIONAL FINANCIAL | § | |
| SERVICES, A DIVISION OF WELLS | § | |
| FARGO BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

---

**DEFENDANT EDUCATION FINANCIAL SERVICES, A DIVISION OF
WELLS FARGO BANK, N.A.'S MOTION FOR A STAY PENDING APPEAL**

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU
OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING
PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT
AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING
PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE
DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE
MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY
RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO
YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT,
YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE,
THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE
THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE DAVID R. JONES, BANKRUPTCY JUDGE:**

Defendant Education Financial Services, a Division of Wells Fargo Bank, N.A., (incorrectly named as "Educational Financial Services") ("Wells Fargo"), files this Memorandum of Law in Support of Its Motion for a Stay Pending Appeal pursuant to Federal Rule of Bankruptcy Procedure 8007 and 11 U.S.C. § 105.  For the following reasons Wells Fargo respectfully requests this Court stay this adversary proceeding pending the appeal of its Order ("Arbitration Order") denying Wells Fargo's Motion to Stay and to Compel Arbitration and, Alternatively, to Dismiss Complaint (Dkt. 10) (the "Arbitration Motion").

## PRELIMINARY STATEMENT

Wells Fargo appealed this Court's Arbitration Order as a matter of right under section 16(a)(1) of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA").  The Court certified the Arbitration Order for direct appeal to the Fifth Circuit, recognizing the need for the Fifth Circuit's guidance in light of "the importance of the matters that are subject of [the] proceeding".  The Fifth Circuit has since taken the appeal (No. 18-20809) and these significant issues are fully briefed.

The Court should stay this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 8007 pending the appeal of the Arbitration Order.  The factors applied by courts in the Fifth Circuit to determine whether a bankruptcy court should exercise its power to stay under Rule 8007 all favor granting this motion.  Wells Fargo will suffer irreparable injury if this adversary proceeding is not stayed.

Wells Fargo's appeal also presents novel and substantial legal issues of first impression. The Supreme Court's decision in *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018) imposes a heavy burden on parties seeking to avoid arbitration based on alleged statutory conflicts when the Federal Arbitration Act ("FAA") applies.  A stay would merely maintain the status quo, which the

Supreme Court has advised is an important consideration in granting a stay, and would not harm Plaintiff. Moreover, considering the specific circumstances and implications of this case, granting a stay would promote the FAA's mandated public policy of conserving judicial resources.

Accordingly, the Court should stay this adversary proceeding pending appeal of the Arbitration Order.

## FACTUAL BACKGROUND

In November 2002 Plaintiff Stephanie Henry ("Plaintiff") obtained a student loan from Wachovia Bank of Delaware, N.A., by entering into an Educaid® Select Access Loan – Application and Promissory Note (the "Note"; the obligations created by the Note are referred to as the "Loan")). (Doc. 1 ¶ 19).[1] Wells Fargo is the successor to Wachovia Bank of Delaware, N.A.'s interest under the Note. (Doc. 1 ¶ 20). The Note contains the following arbitration clause:

> 14. Arbitration. Any controversy or claim arising out of or related to this Note, or an alleged breach of this Note, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Judgment upon the arbitration award may be entered in any court having jurisdiction.

(Doc. 10.) Plaintiff alleges she used the Loan proceeds to attend the Ultrasound Diagnostic School in Houston in 2002. (Doc. 1 ¶ 19).

On February 1, 2013, Plaintiff filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in this Court commencing Bankruptcy Case No. 13-30519. (Doc. ¶ 1.) On February 14, 2013, Wells Fargo filed a proof of claim in the amount of $10,063.29. (*id.*, Doc. 1, Sch. F; Doc. 1 ¶¶ 23-24.) Plaintiff did not object to Wells Fargo's proof of claim, file an adversary proceeding seeking a discharge of her student loan debt as an "undue hardship" under 11 U.S.C. §523(a)(8), or otherwise request a declaration regarding whether her debt with Wells Fargo was

---

[1] Unless stated otherwise, all citations to the record reference docket entries in Adversary Case No. 18-03154.

dischargeable during her Bankruptcy Case.  On May 17, 2018, this Court entered an "Order of Discharge" pursuant to 11 U.S.C. § 1328(a) (the "Discharge Order"), which specifically notes some debts are not discharged – providing student loan debts as an example. (*id.*, Doc. 168.)

On June 12, 2018, Plaintiff filed this adversary proceeding to determine whether her pre-petition student loan debt owed to Wells Fargo was excepted from discharge under 11 U.S.C. § 523(a)(8), and if not, whether Wells Fargo is liable under 11 U.S.C. §§ 105 and 524 for actions that Plaintiff contends violated the Bankruptcy Code's statutory discharge injunction.  (Doc. 1.) Wells Fargo moved to stay the adversary proceeding and to compel arbitration under 9 U.S.C. §§ 3 and 4.  (Doc. 10.) After this Court denied Wells Fargo's Arbitration Motion, Wells Fargo appealed the Arbitration Order under 9 U.S.C. §16(a)(1) and 28 U.S.C. §158. (Doc. 43.)  Wells Fargo also filed a Petition for Permission to Appeal under 28 U.S.C. §158(d)(2), seeking direct appellate review in the Fifth Circuit, which this Court directly certified.  (Doc. 41.)  The Fifth Circuit granted Wells Fargo's Petition on December 12, 2018.

Wells Fargo filed its Appellant's Brief on March 6, 2019.  Plaintiff filed her Appellee's Brief on April 5, 2019.  Wells Fargo's Reply Brief was filed April 26, 2019.  The National Consumer Bankruptcy Rights Center, National Association of Consumer Bankruptcy Attorneys, and Professor Jay L. Westbrook Filed an amicus brief on April 12, 2019.  In the five months following Wells Fargo's appeal of the Arbitration Order, Plaintiff took no substantive action in the adversary proceeding.  On April 9, 2019, however, Plaintiff elected to serve significant discovery requests on Wells Fargo, which includes six interrogatories, forty-three document requests, and thirty-eight requests for admission, covering a purported "relevant time period" of nearly fifteen years.[2]  Although Plaintiff purported to list only six interrogatories, Interrogatory No. 1, alone,

---

[2] A true and correct copy of the discovery requests is attached as <u>Exhibit A</u>.

contains twenty-eight separate and independent requests for information, calling upon Wells Fargo

to:

> [i]dentify any Loan associated with Plaintiffs [defined to be the unknown, and unnamed members of the putative class that Plaintiff seeks to represent], including but not limited to Stephanie Henry, with which You have any connection, and, for each such Loan, state:
>
> a. The nature of Your connection to the Loans (e.g., lender, originator, owner, servicer, etc.);
>
> b. The lender or originator of the initial Loans;
>
> c. Any and all guarantors of the Loans, regardless of whether a guarantor is still associated with or not with the Loans, and/or has been added as a guarantor since the Loan's origination date;
>
> d. the current owner of the Loans;
>
> e. The recipient of the initial Loans (e.g., whether was it given directly to the Plaintiffs or to their learning institutions);
>
> f. The borrowers' names, addresses, telephone numbers, email addresses, birthdates, and last 4 digits of their social security numbers;
>
> g. The co-borrowers' names, addresses, telephone numbers, email addresses, birthdates, and last 4 digits of their social security numbers;
>
> h. The co-signers' names, addresses, telephone numbers, email addresses, birthdates, and last 4 digits of their social security numbers;
>
> i. Any numerical or other type of identifier associated with the Loans;
>
> j. The name of the institution (*sic*) which Plaintiffs were to attend in connection with the loan;
>
> k. Whether the institution (*sic*) which Plaintiffs were to attend were Title IV-Qualified Institutions at the time of origination of the Loan, and whether they are Title IV-Qualified Institutions currently;

l. The name of the Loan program and/or Loan product under which the Plaintiffs borrowed the funds;

m. The Cost of Attendance of the Title IV-Qualified Institution for each year that Plaintiffs received the Loans;

n. The origination date of the initial Loans;

o. The origination amount of the initial Loans;

p. The current status of the Loans (e.g. active, in forbearance, in deferment, delinquent, in default, written off, charged off, etc.);

q. The current outstanding principal balance of the Loans;

r. The current outstanding interest balance of the Loans;

s. The current outstanding fees, service charges or other additional costs attributed the Loans;

t. Whether the Loan was eligible for an IRS Form 1098-E;

u. The date each Plaintiff filed for Bankruptcy;

v. The date of the entry of each of Plaintiffs' Bankruptcy discharges;

w. Bankruptcy status (e.g. discharged in bankruptcy or not);

x. The amount of interest, principal and any fees, service charges or other additional costs collected by You or by a different entity on Your behalf, in connection with the Loans since entry of Plaintiffs' Bankruptcy discharges;

y. The dates of any attempts to collect and the amounts collected for the Loans since entry of Plaintiffs' Bankruptcy discharges;

z. Whether the money lent was for the purpose of attendance at a Title IV-Qualified Institution;

aa. Whether the money lent was for Qualified Education Expenses; and

bb. Whether the Loans were Non-Qualified Education Loans as defined herein.

(*See* Ex. A at 9-11.)[3]

A number of the forty-three document requests are not even restricted to Plaintiff and/or the putative class, but are directed to undefined "borrowers" generally.  *See e.g., id.*, at 17-18 (RFP No. 30: "Please produce all correspondence between You and any collection agencies or services regarding engaging in collection efforts against borrowers who have filed for Bankruptcy"); (RFP No. 31: "Please produce all documents You provided to any collection agencies or services regarding engaging in collection efforts against borrowers who had filed for Bankruptcy during the Relevant Period"); (RFP No. 36: "Please produce all documents that pertain to any stipulation, affirmation, or agreement entered into by You that a loan on which You were attempting to collect was discharged in Bankruptcy"); (RFP No. 37: Please produce any documents used by or otherwise relied upon by You regarding Your (i) collection efforts for borrowers that declared Bankruptcy; or (collection efforts made against a borrower following the entry of a discharge order in Bankruptcy").

Moreover, the process to determine who falls within the definition of "Plaintiffs" and "Class Members" would be a massive undertaking just to determine whose information should be included within the discovery responses.  These terms are defined as:

> "Stephanie Henry on behalf of herself and all others similarly-situated, with Non-Qualified Education Loans originated, owned, serviced, or collected by Defendant, Educational Financial Services (*sic*), A Division of Wells Fargo Bank, N.A., who received a discharge in any of the United States Judicial Districts in a Bankruptcy case filed after April 20, 2005 (similarly-situated individuals sometimes referred to as "Putative Class Members") and their attorneys, consultants, investigators, and all individuals and entities acting on their behalf or pursuant to their direction."

---

[3] Plaintiff includes a document request for similar information with a similar number of subparts.  (*See* Ex. A at 18-19.)

(*See* Ex. A at 7.)  The discovery demands also define "Non-Qualified Education Loans" as "those private Non-Qualified Education Loans which are not Qualified because their purpose was to pay for expenses at a non-Title IV-Qualified Institution" and define "Qualified Education Loan" as having "the same meaning as found in Internal Revenue Code 221(d), as incorporated into the Bankruptcy Code in 11 U.S.C. § 523(A)(8)(B)."  *Id.* at 8.  Plaintiff further defines "Qualified Education Expense" as "any expense that is used for the cost of attendance at a qualified educational institution, as that cost of attendance is calculated by the Title IV-Qualified Institution and reported to the United States Department of Education" and define "Title IV-Qualified Institution" to "mean a learning institution that has eligibility to participate in the Federal student financial assistance programs administered by the Department of Education under Title IV of the Higher Education Act of 1965 as amended."  *Id.*

In sum, Plaintiff's recent discovery demands appear to encompass every document, communication, and byte of electronic data concerning every student loan that Wells Fargo has ever originated or serviced, along with extensive information regarding ___**all**___ of Wells Fargo's loans, regardless of purpose.  *See* Ex. A, generally.  The cost of providing this information to Plaintiff is massive.

## LEGAL ARGUMENT

### I.  Federal Rule of Bankruptcy Procedure 8007 Justifies a Stay Pending Appeal.

The Court should stay this adversary proceeding under Rule 8007 of the Federal Rules of Bankruptcy Procedure.  Rule 8007 authorizes a bankruptcy court to enter a stay or any other appropriate orders during the pendency of an appeal of the court's order.  *See* Fed. R. Bankr. P. 8007(a), (e).  The decision to grant a stay pending appeal of an order is committed to the sound discretion of the court.  *See In re Dernick*, 2019 WL 236999, at *2 (Bankr. S.D. Tex. January 16,

2019) (citing *Arnold v. Garlock, Inc.*, 278 F.3d 426, 438-39 (5th Cir. 2001) (noting "the Fifth Circuit has instructed lower courts to use discretion when deciding whether or not to grant a stay pending appeal.")

To grant a stay under Rule 8007, bankruptcy courts consider the following four factors: "(1) a likelihood of success on the merits; (2) an irreparable injury if the stay is not granted; (3) that the stay will not substantially harm the other parties; and (4) that the stay will serve the public interest." *Zehr v. Osherow*, No. 5:18-cv-355, 2019 WL 266973, at *2 (W.D. Tex. Jan. 17, 2019); *In re First S. Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987). "The first two factors . . . are the most critical." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009). Also, "the maintenance of the status quo is an important consideration in granting a stay." *Nken*, 556 U.S. at 427 (citing *Dayton Board of Education v. Brinkman*, 439 U.S. 1358, 1359 (1978)). Ultimately, the question "whether proceedings should be stayed until the appeal regarding arbitrability has been resolved" is decided "on a case-by-case basis." *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 908 (5th Cir. 2011).

### A. *Wells Fargo Will Suffer Irreparable Harm Without a Stay.*

Should litigation proceed while Well Fargo's appeal is pending, it will suffer irreparable harm that far outweighs any possible inconvenience to Plaintiff because, absent a stay, Wells Fargo would certainly be deprived of its right to arbitrate. This is especially evident in light of Plaintiff's recent significant discovery demands.

As recognized in this Circuit, "[b]y definition, 'irreparable injury' is that for which compensatory damages are unsuitable." *Zehr*, 2019 WL 266973, at *3 (quoting *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992)); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ("An injury is 'irreparable' only if it cannot be

undone through monetary remedies.")  In this context and in contrast to other circumstances in which "monetary expenses incurred in litigation are normally not considered irreparable, it is a unique situation where these expenses are incurred pending an appeal of an order refusing to compel arbitration."  *Sample v. Brookdale Senior Living Cmtys., Inc.*, No. 11-cv-5844, 2012 WL 195175, at *2 (W.D. Wash. Jan. 23, 2012) (finding "in the limited context of an interlocutory appeal of the order refusing to compel arbitration, defendant would be irreparably harmed if the court did not enter a stay."); *MC Asset Recovery, LLC v. Castex Energy, Inc.*, No. 07-cv-076, 2009 WL 10674184, at *1 (N.D. Tex. June 19, 2009) (assuming whether to stay pending the appeal of an order denying arbitration is discretionary, but concluding that "[i]f a stay is not granted and Defendants succeed on their appeal, the parties will have needlessly suffered additional litigation expense.")  "By authorizing an interlocutory appeal from a denial of arbitration, [the FAA] evidences a congressional determination that a wrongful denial of the right to have the case sent promptly to arbitration is a harm that cannot be adequately remedied by an appeal at the end of the case."  *Meyer v. Kalanick*, 203 F. Supp. 3d 393, 396 (S.D.N.Y. 2016); *Kan. Gas & Elec. Co. v. Westinghouse Elec. Corp.*, 861 F.2d 420, 422 (4th Cir. 1988).

Absent a stay, Wells Fargo will be effectively deprived of the cost and efficiency benefits attendant to arbitration, and would suffer excessive class-wide discovery costs that would be a "harm that cannot be adequately remedied".  *Meyer*, 203 F. Supp. 3d at 396.  Notably, counsel for Plaintiff here has conceded this point in a similar case brought against Wells Fargo in the Bankruptcy Court for the District of New Jersey.  *See Knepp v. Educational Financial Services, a Division of Wells Fargo Bank, N.A.*, No. 18-01389, (Bankr. D.N.J.) Doc. 47 at 8 ("acknowledge[ing] [Wells Fargo's] case law holding that **litigation while an appeal of the denial**

**of arbitration is pending can amount to harm** . . . ." (emphasis added)).[4]  The New Jersey bankruptcy court agreed.  *See* No. 18-01389, Doc. 65-2 at 42:9-11 (staying action pending appeal of its order denying Wells Fargo's motion to compel arbitration and noting that "[a]s to the harm to the Bank, if it's forced to litigate and continue to litigate this case, there's a lot of potential harm if the arbitration did apply.")

Although the Fifth Circuit has rejected a bright line rule to stay a civil action pending appeal of a motion to compel arbitration based only upon the argument that "arbitration ensures substantial speed and cost savings", it has recognized the validity of the additional "harm" argument raised in *Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300, 309 (S.D. Tex. 1999).  There, in granting a stay pending appeal, "the court included the additional argument that [defendant bank] would have been forced to engage in discovery absent a stay, which would cause irreparable injury because such discovery could jeopardize its right to arbitrate." *Weingarten Realty Investors*, 661 F.3d at 913 (citing *Trefny*, 243 B.R. at 309).[5]  The Fifth Circuit observed that having to participate in such discovery, "with the potential cost increases, may be an irreparable injury. . . ." *Id.*  (further noting that "where parties contracted for arbitration to limit discovery of sensitive information," the argument regarding discovery is even stronger.); *see also Archer & White Sales, Inc. v. Henry Schein, Inc.*, No. 12-cv-572, 2017 WL 661768, at *3 (E.D. Tex. Feb. 17, 2017) (observing that "the Fifth Circuit in *Weingarten Realty Investors* left open the possibility that discovery that could jeopardize the movant's right to arbitrate, when added to the potential cost

---

[4] The bankruptcy court's decision in *Knepp* is currently on appeal to the United States District Court for the District of New Jersey, and the bankruptcy court has stayed that case based, *inter alia*, on the Rule 8007 factors, pending appeal.  (No. 18-01389, Doc. 62.)

[5] It is worth noting that there exists a circuit split on the question of whether the filing of an appeal under § 16 of the FAA automatically divests the district (or bankruptcy) court of jurisdiction over further proceedings.  The majority of circuits, including the Third, Fourth, Seventh, Tenth, Eleventh, and D.C. Circuit, as well as all district courts in the Sixth Circuit, hold in the affirmative.  Accordingly, in those courts, Plaintiff would be jurisdictionally barred from even serving the discovery here.

increases brought about by litigating in court, could be an irreparable injury"); *see also Kubala v. Supreme Prod. Services, Inc.*, 15-cv-116, 2016 WL 7971340, at *1 (S.D. Tex. July 25, 2016) (staying all aspects of plaintiffs' claims, including discovery, pending resolution of interlocutory appeal of district court's determination that plaintiffs were not bound by arbitration agreement).

Here, after five months of inaction, with the appeal then nearly fully briefed, Plaintiff served on Wells Fargo abusively overbroad discovery demands described at pp. 5-9, above.  Also as noted above at pp. 8-9, several of the "definitions" contained in Plaintiff's discovery demands require Wells Fargo to follow a trail of statutory references to determine whether any particular student loan falls within Plaintiff's self-definition.  To follow the chain of statutory references would require Wells Fargo to undertake significant individualized inquiries which entail disputed legal conclusions just to determine whether an individual loan might fall within Plaintiff's definitions.  Said differently, Plaintiff demands Wells Fargo to perform a massive review of its files and accept Plaintiff's self-defined statutory construct so that she can pursue class-wide damages claims.[6]

The Parties' Arbitration Agreement does not anticipate such absurdly broad discovery. Instead, it contemplates a two-party – not a class – arbitration and incorporates the AAA Commercial Arbitration Rules, which were designed to achieve an efficient and economical resolution of the dispute.[7]  While Wells Fargo's request for arbitration is on appeal it is facing the significant burden of class-wide discovery and defense of class-wide claims.  To allow class-wide discovery under the Arbitration Agreement here will injure substantive rights that cannot be

---

[6] Wells Fargo incorporates by reference its Motion for Protection from Discovery, which is being filed contemporaneously herewith.

[7] For example, the AAA Commercial Arbitration Rules do not provide for serving requests for admission.  Plaintiff just served thirty-eight requests for admission on Wells Fargo.

repaired post-appeal.   As the Supreme Court has observed, an agreement to authorize class

arbitration may not be implied solely from the agreement to arbitrate:

> An implicit agreement to authorize class-action arbitration,
> however, is not a term that the arbitrator may infer solely from
> the fact of the parties' agreement to arbitrate. This is so because class-
> action arbitration changes the nature of arbitration to such a degree
> that it cannot be presumed the parties consented to it by simply
> agreeing to submit their disputes to an arbitrator. In bilateral
> arbitration, parties forgo the procedural rigor and appellate review
> of the courts in order to realize the benefits of private dispute
> resolution: lower costs, greater efficiency and speed, and the ability
> to choose expert adjudicators to resolve specialized disputes. . . . But
> the relative benefits of class-action arbitration are much less assured,
> giving reason to doubt the parties' mutual consent to resolve
> disputes through class-wide arbitration."

*See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686-87 (2010) (further noting that

"it follows that a party may not be compelled under the FAA to submit to class arbitration unless

there is a contractual basis for concluding that the party agreed to do so" and "[w]e think that the

differences between bilateral and class-action arbitration are too great for arbitrators to presume,

consistent with their limited powers under the FAA, that the parties' mere silence on the issue of

class-action arbitration constitutes consent to resolve their disputes in class proceedings.")   Just

days ago the Supreme Court bolstered its holding in *Stolt-Nielsen*, stating definitively that "[c]ourts

may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide

basis."  *Lamps Plus, Inc. v. Varela*, 587 U. S. __ (2019).   Accordingly, the Court held "[l]ike

silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration

agreement agreed to 'sacrifice[] the principal advantage of arbitration.'"  *Lamps Plus, Inc.*, 587

U.S. __ (quoting *AT&T Mobility LLC v. Concepcion*, 563 U. S. 333, 348 (2011)).   Not only does

the Arbitration Agreement here **not** explicitly allow for class arbitration, it requires arbitration of

"[a]ny controversy or claim arising out of or related to *this* Note, or an alleged breach of *this* Note".

(Doc. 10.)  The clause focuses on arbitration relating to "this Note," not other parties' notes, and even if construed as ambiguous (which it is not), the Supreme Court rejects any inference that the Parties agreed to arbitrate on a classwide basis.  Thus, if the case is sent to an arbitrator, Wells Fargo would not suffer the burden of responding to these requests.

Wells Fargo also would suffer the harm of being deprived of the opportunity to have the arbitrator decide whether to allow class arbitration – a critical legal issue that would need to be decided by the arbitrator prior to any class discovery.  *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451 (2003) (finding that under the parties' agreement, "the question—whether the agreement forbids class arbitration—is for the arbitrator to decide [because] [t]he parties agreed to submit to the arbitrator '[a]ll disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract'" (alteration in original) (emphasis omitted) (quoting arbitration clause)); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (explaining that when the arbitration rules provide the arbitration panel with authority to determine the scope of its own jurisdiction, questions concerning arbitrability should be made by the arbitration panel); *Hendricks v. UBS Fin. Servs., Inc.*, 546 F. App'x 514, 519 (5th Cir. 2013) ("[W]e leave for the FINRA arbitration panel to decide whether the class waiver requires the Plaintiffs to arbitrate on an individual basis.")  To proceed forward with this adversary proceeding against Wells Fargo during the pendency of its appeal of the Arbitration Order – especially if Wells Fargo is compelled to participate in the significant discovery demands made upon it – amounts to a "harm that cannot be adequately remedied".

### B.  Wells Fargo Meets the "Likelihood of Success on the Merits" Standard for a Stay Pending Appeal, and Its Appeal Raises Substantial, Serious, and Novel Issues.

In considering the "likelihood of success on the merits" prong, "a movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance

of equities weighs heavily in favor of granting the stay." *Zehr*, 2019 WL 266973, at *2-3; *In re First South Savings Ass'n*, 820 F.2d at 709 n.10 (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) ("*Ruiz I*"). If the appeal involves a question of law that has not been "definitively addressed by a higher court", then the burden of showing a likelihood of success on the merits is more easily satisfied. *In re Texas Equip. Co.*, 283 B.R. 222, 226-27 (Bankr. N.D. Tex. 2002). Thus, where, as here, the appellant presents a substantial case on the merits when a serious legal question is involved – especially one that the Fifth Circuit has yet to consider post-*Epic Systems* – the balance of the equities weighs heavily in favor of granting the stay.

This case does not present the run-of-the-mill question of "whether arbitration is required" between two private parties. *See Weingarten Realty Investors*, 661 F.3d at 910. Instead, the issue on appeal to the Fifth Circuit is significant and substantial, as it involves the interplay between the FAA and the Bankruptcy Code, two important federal statutes, and the effect of arbitration clauses in consumer agreements, and student loan agreements in particular. It is hard to imagine more significant civil legal questions. The appeal involves the application of very recent Supreme Court precedent – requiring the Fifth Circuit to reconcile its decisions in *In re National Gypsum Co.*, 118 F.3d 1056 (5th Cir. 1997), and *In re Gandy*, 299 F.3d 489 (5th Cir. 2002), which hold that a bankruptcy court has discretion to decline to compel arbitration in adversary proceedings asserting certain claims under the Bankruptcy Code, with the Supreme Court's more recent decision in *Epic Systems*, which imposes a heavy burden on parties seeking to avoid arbitration to demonstrate a "clear and manifest" congressional intent to supplant the FAA in favor of another federal statute. The effect of *Epic Systems* will soon be addressed by the Fifth Circuit and a district court in the Third Circuit. This Court's certification of the issues arising from the Arbitration Order for direct appeal to the Fifth Circuit recognized the need for the Fifth Circuit's guidance in light of "the

importance of the matters that are subject of [the] proceeding", and the Fifth Circuit has taken this appeal. Further, under similar circumstances, Bankruptcy Judge Vincent Papalia of the Bankruptcy Court for the District of New Jersey just recently stayed a case pending appeal of his order denying Wells Fargo's motion to compel arbitration.  (No. 18-01389, Doc. 62.)  The appeal of Judge Papalia's Order pending before the United States District Court for the District of New Jersey and the appeal this Court certified to the Fifth Circuit involve similar issues.  (*Compare* Doc. 53 with No. 2:19-cv-05096-CCC (D.N.J.), Docs. 2, 4.)  Notably, in staying the case pending appeal, the bankruptcy court did so not only pursuant to the divestiture rule, but did so pursuant to the Rule 8007 factors.  *See* No. 18-01389 (Bankr. D.N.J.), Doc. 65-2 at 42: 18-20 (finding "the standards of 8007 were met").[8]  As Wells Fargo has shown in its Motion to Compel Arbitration briefing and its appellate briefing, by this Court's direct certification to the Fifth Circuit, and by commentary from other courts and non-parties regarding this case, this appeal raises very serious and substantial issues and therefore meets the "likelihood of success on appeal" standard.

Moreover, although Wells Fargo satisfies the "likelihood of success" standard due to the substantial, serious, and novel issues on appeal, Wells Fargo alternatively satisfies the standard because, with the utmost respect to this Court and to its Arbitration Order, Wells Fargo submits it has shown a likelihood that it will actually succeed on the merits of its appeal.  *See Ruiz I*, 650 F.2d at 565 (noting that a movant may satisfy the "likelihood of success" standard by "show[ing] a 'probability of success on the merits'"); *ODonnell v. Harris Cty.*, 260 F. Supp. 3d 810, 815 (S.D. Tex. 2017) (noting that "movants must make a strong showing that [they are] likely to succeed on

---

[8] In deciding to stay the adversary proceeding pending appeal of his order denying arbitration, New Jersey Bankruptcy Judge Papalia commented that this Court's order "certifying the appeal – the direct appeal in the *Henry* case indicates that the Court recognizes the importance of the matters that are subject to this proceeding. And that is the – really the same counsel involved in that case as well, and argued it recently before the Fifth Circuit."  (No. 18-01389 (Bankr. D.N.J.), Doc. 65-2 at 39:18-23.)

the merits" but "need not always show a 'probability' of success on the merits" and instead "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." (internal citations omitted)).   In its Arbitration Motion Wells Fargo set forth its argument in favor of compelling arbitration, highlighting Supreme Court precedent and establishing there is no clear and manifest congressional intent in this instance to disregard the FAA's mandate to arbitrate Plaintiff's claims.[9] Respectfully, Wells Fargo maintains *Epic Systems* is clear and cannot be reconciled with this Court's decision to follow *National Gypsum*, which relied on the type of policy concerns the Supreme Court has consistently rejected, to hold that a bankruptcy court retains discretion to refuse to stay proceedings and compel arbitration.   Wells Fargo believes *Epic Systems* requires reevaluation of the discretionary standard applied in *National Gypsum*.

        And while this Court disagrees with Wells Fargo's position that *Epic Systems* requires this Plaintiff's claims to be arbitrated, the Court has at least implied that post-*Epic Systems*, the issue of arbitrability is not an easy one to decide in recognizing the "importance of the matters that are subject of this proceeding" and directly certifying the question to the Fifth Circuit.  The most recent decision to address the issue is *Trevino v. Select Portfolio Servicing, Inc., et al.*, No. 16-7024, 2019 WL 1090165 (Bankr. S.D. Tex. Mar. 7, 2019), by Judge Rodriguez, which compelled arbitration of a debtor's discharge violation claims over an opposition arguing that the Bankruptcy Code supplanted the FAA.  *Id.* at *1, 14-15.  Judge Rodriguez analyzed *Epic Systems*, *In re Nat'l Gypsum Co.*, *Shearson/American Express v. McMahon*, 482 U.S. 220 (1987), and *In re Anderson*, 884 F.3d 382 (2d Cir. 2018), among other authorities, to ultimately hold that plaintiffs in that case had failed to meet their "heavy burden" under *Epic Systems* to show that the Bankruptcy Code overrides the

---

[9] In the interest of judicial efficiency, Wells Fargo incorporates its briefing in support of its Arbitration Motion.  (Doc. 10.)

FAA. *See* 2019 WL 1090165, *7-13. Judge Rodriguez compelled arbitration of claims asserted by the plaintiffs in that case, including alleged discharge violation claims, concluding that it "is not persuaded that compelling arbitration in the instant case . . . is inadequate to protect the substantive rights granted by the Bankruptcy Code." *Id.* at *13.

Accordingly, Wells Fargo has shown a sufficient likelihood of success to justify a stay pending appeal.

### C.  *Plaintiff Will Not Suffer Any Harm if the Court Stays This Case Pending Appeal.*

In contrast to the demonstrated harm Wells Fargo would suffer if the Court does not stay this matter, Plaintiff will not suffer harm by a stay. Instead, the Court will merely be maintaining the status quo, which the Supreme Court has advised is "an important consideration in granting a stay." *Nken*, 556 U.S. at 427. Further, any delay occasioned by Wells Fargo's appeal of the Arbitration Order does not result in harm to the Plaintiff. *See MC Asset Recovery, LLC v. Castex Energy, Inc.*, No. 07-cv-076, 2009 WL 10674184, at *1 (N.D. Tex. June 19, 2009) (noting that "delay alone" is not enough "to deny a motion to stay pending an non-frivolous appeal."); *Family Kingdom, Inc. v. EMIF New Jersey Ltd. P'ship, 225 B.R. 65, 75 (D.N.J. 1998)* ("[T]here is minimal, if any, harm to [the non-movant] if the stay during the relatively short time period in which the Court considers the merits of the appeal is granted."); *see also In re Genesis Health Ventures, Inc.*, 367 B.R. 516, 522 (Bankr. D. Del. 2007) ("Given that so much time has already elapsed, it is doubtful that Plaintiffs will be prejudiced significantly by another delay, provided that it is not lengthy.")

Here, the appeal is fully briefed. A stay of this adversary proceeding will preserve the status quo and will not harm the Plaintiff while the parties await a Fifth Circuit decision.

### D. *Staying the Case Pending Appeal of Matters of Public Importance Serves the Public Interest.*

Public interest is always served by promoting arbitration. *See MC Asset Recovery, LLC*, 2009 WL 10674184, at *1 ("[A] stay to allow [d]efendants to appeal regarding their right to arbitrate serves the public interest."); *see also Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) (noting the strong policy in favor of arbitration); *S & T Oil Equip. & Mach., Ltd. v. Juridica Investments Ltd.*, No. 11-cv-0542, 2011 WL 864837, at *6 (S.D. Tex. Mar. 10, 2011) (noting the "liberal federal policy favoring arbitration agreements" and the public interest "favors denying [plaintiff's] request to enjoin the arbitration."); *Waguih Siag v. King & Spalding LLP*, No. 10-cv-367, 2010 WL 2671580, at *2 (S.D. Tex. June 30, 2010) ("[E]njoining the arbitration proceedings would disserve the public interest by undermining confidence in arbitration provisions generally."); *RA Investments I, LLC*, No. 04-cv-1565, 2005 WL 6800974, at *6 (N.D. Tex. May 20, 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)) ("It is well established that the public interest supports a stay pending appeal.")  Through the FAA, Congress expressed the public importance of favoring arbitration over litigation.  *See RA Investments I, LLC*, 2005 WL 6800974, at *6 ("The purpose of the statute was 'to streamline the appellate aspect of the litigation process so that parties may realize their arbitration rights at the earliest possible moment." (internal quotations omitted)).

Moreover, because Wells Fargo has established irreparable injury and a likelihood of success, a stay would inherently serve the public interest.  *See Am. Tel. & Tel. v. Winback & Conserve Prog., Inc.*, 42 F.3d 1421, 1427 n. 8 (3d Cir. 1994) (observing that "it almost always will be the case that the public interest will favor the [movant]" who "demonstrates both a likelihood of success on the merits and irreparable injury.")

Accordingly, under the specific circumstances of this case, granting a stay would promote the FAA's mandated public policy of conserving resources. Having satisfied the four elements required to obtain a stay under Rule 8007, this Court should grant Wells Fargo's motion.

## **CONCLUSION**

Wells Fargo respectfully requests this Court enter an order staying this adversary proceeding pending the outcome of its appeal.

Dated: May 1, 2019

By: /s/ Thomas A. Connop

Thomas A. Connop
  Texas Bar No. 04702500
Robert T. Mowrey
  Texas Bar No. 14607500
Locke Lord LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
T: 214-740-8547
F: 214-756-8547
Email: TConnop@lockelord.com
Email: RMowrey@lockelord.com

Bradley C. Knapp
  Texas Bar No. 24060101
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130
T: 504-558-5210
F: 504-910-6847
Email: BKnapp@lockelord.com

Kurt Lance Krolikowski
  Texas Bar No. 24074548
Locke Lord LLP
600 Travis Street, Suite 2800
Houston, Texas  77002
T: 713-226-1200
F: 713-223-3717
Email: KKrolikowski@lockelord.com

*Attorneys for Wells Fargo*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 1st day of May 2019, a copy of the above and

foregoing was served either electronically by the Clerk of the Court or by electronic mail to:

Adam Corral
CORRAL TRAN SINGH, LLP
1010 Lamar St., Ste., 1160
Houston, TX 77002

Jason W. Burge
Kathryn J. Johnson
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600


Austin Smith
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017

Lynn E. Swanson
JONES, SWANSON, HUDDELL &
GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130


Joshua B. Kons
LAW OFFICE OF JOSHUA B. KONS, LLC
939 West North Avenue, Suite 750
Chicago, IL 60642

George F. Carpinello
Adam R. Shaw
Robert C. Tietjen
BOIES SCHILLER FLEXNER LLP
30 South Pearl St., 11th Floor
Albany, NY 12207


/s/ Thomas A. Connop
Thomas A. Connop


## CERTIFICATE OF CONFERENCE

I hereby certify that, on April 12, 2019, I conferred with counsel for Plaintiff regarding the foregoing Motion.  Plaintiff's counsel indicated that Plaintiff was unwilling to withdraw her discovery requests.

/s/ Thomas A. Connop
Thomas A. Connop