UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re:<br><br>STEPHANIE HENRY<br><br>    Debtor<br><br>STEPHANIE HENRY, and FRANK PETER DeSANTIS on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>EDUCATIONAL FINANCIAL SERVICES, A DIVISION OF WELLS FARGO BANK, N.A,<br><br>    Defendant. | Chapter 13<br><br>Case No. 13-30519 (DRJ)<br><br><br><br>Adv. Pro. No. 18-03154 (DRJ)<br><br><br><br><br><br><br><br>**DISTRICTWIDE CLASS ACTION** |

**FIRST AMENDED AND RESTATED COMPLAINT**

Plaintiffs Stephanie Henry ("Henry") and Frank Peter DeSantis ("DeSantis," and together with Henry, "Plaintiffs"), by and through undersigned counsel, hereby file this first amended and restated complaint against Defendant Educational Financial Services, a division of Wells Fargo Bank, N.A., ("Wells Fargo") upon personal knowledge as to those matters within their personal knowledge, and upon information and belief as to all other matters, as follows:

1489680v.1

# I.

## PRELIMINARY STATEMENT

Not all loans made to students are non-dischargeable student loans, including the educational loans at issue in this action. In fact, only three types of educational debts are excepted from statutory discharge under 11 U.S.C. § 523(a)(8): (1) federal student loans or loans made directly by nonprofit schools; (2) conditional educational grants; and (3) qualified education loans made by private lenders. Defendant, with full knowledge of the scope and application of section 523(a)(8), has exploited the statutory framework protecting qualified education loans from discharge in bankruptcy in an attempt to appropriate bankruptcy protection for a large universe of dischargeable consumer debt. Specifically, Defendant has serviced discharged consumer loans, including but not limited to loans for bar exam study courses, medical residency programs, for-profit flight schools, unaccredited trade schools, and secondary schools. Debts incurred to pay for expenses at educational institutions that are not recognized by the Department of Education under Title IV of the Higher Education Act are not "qualified education loans" as that term is defined in the Higher Education Act, the Internal Revenue Code, and the Bankruptcy Code. Such loans have no protection under section 523(a)(8) and are automatically discharged upon entry of the statutory injunction effected by the Discharge Order. Plaintiffs bring this action to enforce their rights, and the rights of similarly situated persons, to a fresh start under the Bankruptcy Code.

# II.

## PARTIES

1.      STEPHANIE HENRY is an individual and a resident of this district who filed for relief under Chapter 13 of Title 11 of the United States Code in 2013, and received a discharge order and the entry of the statutory injunction in 2018.

2. FRANK PETER DeSANTIS is an individual and a resident of this district who filed for relief under Chapter 7 of Title 11 of the United States Code in 2019, and received a discharge order and the entry of the statutory injunction in May 2019.

3. EDUCATIONAL FINANCIAL SERVICES, A DIVISION OF WELLS FARGO BANK, N.A. is a business entity that in the ordinary course of business regularly, on behalf of itself or others, has engaged in, and/or currently engages in the origination, servicing, and collection of consumer debt.

### III.

### JURISDICTION AND VENUE

4. This Adversary Proceeding is brought under Case Number 13-30519.

5. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(b), 1332, and 1334(b). This is a core proceeding under Title 11 because it concerns determinations as to the dischargeability of debts.

6. This Adversary Proceeding is brought pursuant to 11 U.S.C §§ 105, 523(a)(8), and 524, and Federal Rule of Bankruptcy Procedure Rule 7001(9).

7. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1409 because Henry and DeSantis both reside in this district, they obtained their bankruptcy discharges in this district, and some of the conduct complained about occurred in this district.

### IV.

### STATEMENT OF FACTS

**A. Section 523(a)(8) Of The Bankruptcy Code.**

8. In 1978, there was a growing concern that students were taking advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon

after graduation. In response, Congress enacted section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship). Through a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to obtain discharges of their student loan debts.

9. Although the rationale behind section 523(a)(8) has been questioned by many scholars,[1] the justification for excepting federal student loan debt from discharge was not without some merit. In fact, in the age of soaring tuition costs, the original justification has become more compelling. Section 523(a)(8) serves not only to protect the federal government and taxpayer funds, but also to preserve the solvency of student lending programs for the next generation of students.

10. In 2005, after extensive lobbying, private education lenders and debt collectors won <u>limited</u> protection in bankruptcy <u>for certain educational loans</u>.[2] Specifically, Congress limited protection for private education loans to the extent that such money supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools solely for tuition, room, board, and books ("Qualified Education Loans").

11. But commercial lenders were not satisfied with the origination volume of Qualified Education Loans. The paperwork was burdensome and schools would not certify sums in excess of tuition. Further, the 2005 change in the law did not affect the bankruptcy rights of the students

---

[1] *See* Rafel I. Pardo & Michelle R. Lacey, THE REAL STUDENT-LOAN SCANDAL: UNDUE HARDSHIP DISCHARGE LITIGATION, 83 Am. Bankr. L.J. 179, 181 (2009) ("Tragically, Congress disregarded empirical evidence from a General Accounting Office study which found that less than one percent of all federally insured and guaranteed student loans were discharged in bankruptcy. Simply put, the discharge of student loans in bankruptcy was too minor to threaten the economic viability of the student-loan program.").

[2] Bankruptcy Abuse and Consumer Protection Act Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005).

who attended thousands of for-profit colleges and high schools that had not obtained Title IV accreditation. As a result, lenders initiated new programs that lent money directly to students planning to attend these unaccredited schools and programs ("Consumer Education Loans" or "Non-Qualified Education Loans"). Consumer Education Loans were often easier to originate because they bypassed the certification requirements codified in the Higher Education Act. These loans were not and are not Qualified Education Loans under the Tax Code or Bankruptcy Code. Like student credit card debt, they are simply unsecured private consumer debts and are discharged automatically upon entry of a discharge injunction.

**B.  The Application Of Section 523(a)(8).**

12.     Prior to 2005, section 523(a)(8) was easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of "undue hardship." This fueled the widespread belief, including by the great majority of members of the bankruptcy bar, that all student loans are non-dischargeable. But in 2005, when the Bankruptcy code was amended, private lenders were only given qualified protection; section 523(a)(8)(B) only excepts <u>some</u> private education loans from discharge.[3] The prior unfounded belief in non-dischargeability of all student loans was the impetus for unscrupulous creditors to exploit the application of section 523(a)(8) and further deceive debtors into thinking that all private student loans, like their federal cousins, were excepted from discharge.

13.     This problem was made worse because section 523(a)(8) is "self-executing" and thus its correct application relies on the good faith and honesty of creditors. When a debtor files a bankruptcy petition, the debtor includes all unsecured debts on a Schedule F form, listing only the

---

[3] 11 U.S.C. § 523(a)(8)(B).

amount of the debt, the name of the creditor, and the consideration received. After demonstrating compliance with the Bankruptcy Code, a court then issues an order discharging all pre-petition debts (a "Discharge Order") listed on the bankruptcy petition except for those listed in section 523(a). Importantly, the Discharge Order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including "debts for most student loans."

14.     If a creditor believes that a debt they hold is excepted from discharge, it is its legal burden to prove that the debt is encompassed by section 523(a)(8). Once the creditor proves the debt is presumptively non-dischargeable, the burden then shifts to the debtor to prove that repaying the debt would constitute an "undue hardship." Any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the statutory injunction effected by the Discharge Order. Accordingly, it is left to the creditor to determine whether its particular educational loan is excepted from discharge by section 523(a)(8), and, where confusion exists, seek clarity from the court. The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions.

C.  **Defendant Manipulated The Application Of Section 523(a)(8) And Deceived Debtors Into Believing Their Non-Qualified Education Loans Were Not Discharged.**

15.     Not content with the protections won from Congress in 2005, creditors such as Wells Fargo devised a scheme to manipulate this presumption of non-dischargeability and deceive debtors and the bankruptcy courts into thinking that all private student loans, both qualified and non-qualified, for attendance at both accredited and unaccredited institutions, were excepted from discharge. To effectuate this fraud, creditors represented to student debtors that the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose.

1489680v.1

16. And so, a law that was originally designed to prevent students from taking advantage of the bankruptcy system enabled unscrupulous creditors to take advantage of the bankruptcy system. Consumer Education Loans are disproportionately issued to low-income students who lack the resources and knowledge to seek relief in an adversary proceeding, which is an expensive and time-consuming undertaking. In fact, only one tenth of one percent (0.1%) of debtors in bankruptcy seek to discharge their student debts.[4] In the rare event a debtor has filed an adversary proceeding, creditors often settle or forgive student debts that were already legally discharged, thereby preventing courts from discovering that these debts were never entitled to a presumption of non-dischargeability in the first instance, and ensuring that they are able to continue collecting on 99.9% of other discharged debts without consequence.

### D. Defendant's Representations to Borrowers Contradict the Representations Made to the SEC and Sophisticated Investors.

17. At the same time that student lenders were representing to student debtors that the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose, those same lenders were securitizing these debts for sale on the secondary market. Lenders were rightfully concerned that if they represented to investors that all private student loans were non-dischargeable in bankruptcy, sophisticated investors would easily enough discover the misrepresentation (based on a plain reading of the statute), and issuers would be liable for securities violations.[5] Major lenders and underwriters, including Wells Fargo's affiliates, therefore, included in student loan asset-backed securities' prospectuses language warning investors that, pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge.

---

[4] Jason Iuliano, AN EMPIRICAL ASSESSMENT OF STUDENT LOAN DISCHARGES AND THE UNDUE HARDSHIP STANDARD, 86 Am. Bankr. L.J. 495, 505 (2012) (stating that in 2007, at least, only 0.1% of all debtors in bankruptcy with student loans filed an adversary proceeding seeking discharge).

[5] *See, e.g.*, 15 U.S.C. § 78j.

18. For example, in connection with Navient Student Loan Trust 2015-1, Wells Fargo's affiliate Wells Fargo Securities served as underwriter and lead manager, Wells Fargo's affiliate Wells Fargo Bank, N.A. served as indenture trustee and eligible lender trustee, and Wells Fargo's affiliate Wells Fargo Delaware Trust Company, N.A. served as owner trustee. The Prospectus for that securitization stated:

> ***Risk of Bankruptcy Discharge of Private Credit Student Loans***: Currently, private education loans <u>made for qualified education expenses</u> are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including their certification of the borrower's cost of attendance. This process does not involve school enrollment verification as an additional criteria and, therefore, may be subject to some additional risk that <u>the loans were not used for qualified education expenses and thus could become dischargeable in a bankruptcy proceeding.</u> If you own any notes in a related issuing entity, you will bear any risk of loss resulting from the discharge of any borrower of a private education loan to the extent the amount of the default is not covered by the issuing entity's credit enhancement.")

*See* Navient Loan Trust 2015-1 Prospectus, dated February 12, 2015, at 26 (underlined emphasis added).[6]

19. Upon information and belief, Wells Fargo Securities, Wells Fargo's affiliate, sold notes using the Navient Loan Trust 2015-1 Prospectus, thereby acknowledging that Wells Fargo Securities did not believe that Prospectus contained any material misstatements, including that Prospectus's description of the risk of bankruptcy discharge of Consumer Education Loans that are not used for qualified education expenses. By definition, none of the loans at issue in this action were used for qualified education expenses.

---

[6] *See Loreley Financing No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 172 (2nd Cir. 2015) (stating that affiliated entities are liable for common law fraud for statements made in an offering memorandum even where they were involved in the securitization but are not the issuer).

E.  **Plaintiffs' Background and Procedural History.**

20. Henry attended the Ultrasound Diagnostic School in Houston in 2002.

21. On or around November 11, 2002, Henry borrowed $6,684 from either Wells Fargo Bank N.A. or one of its predecessors-in-interest, to pay for costs at the Ultrasound Diagnostic School (the "Henry Wells Fargo Loan").

22. The Ultrasound Diagnostic School was not and is not a Title IV accredited institution under the Higher Education Act. It is a technical trade school.

23. The Henry Wells Fargo Loan was not made to a student attending an eligible institution and thus was not a Qualified Education Loan under section 523(a)(8)(B), or otherwise protected as an educational loan or educational grant under section 523(a)(8).

24. On February 1, 2013, Henry filed a petition for relief under Chapter 13 of Title 11 of the United States Code in this Court.

25. Henry properly scheduled the Henry Wells Fargo Loan.

26. On February 13, 2013, Wells Fargo filed a claim in Henry's bankruptcy case.

27. Wells Fargo was paid through Henry's Chapter 13 confirmed plan.

28. On May 17, 2018, this Court entered a discharge order in Henry's case.

29. On May 28, 2018, Henry's attorney sent Defendant a letter informing it that Henry was represented by counsel so she should not be contacted directly by Defendant any longer, informing it that the Henry Wells Fargo Loan was discharged, requesting that Defendant update her credit report as to the discharge, and asking that no collection efforts be made on the Henry Wells Fargo Loan.

30. On or about May 30, 2018, Defendant sent both Henry and her attorney Austin Smith letters acknowledging the request to cease direct contact with Henry. Defendant further

asked that Austin Smith inform it when it could resume contact with Henry. On the face of the letters themselves, Defendant acknowledged that the letters were "an attempt to collect a debt."

31. This collection effort, made by Defendant after Henry's bankruptcy discharge and after Defendant having been advised by Henry's attorney that the Henry Wells Fargo Loan had been discharged in Henry's bankruptcy, was made knowingly and willfully in violation of the statutory injunction.

32. DeSantis's brother, Arthur P. Winkelstern, attended the ATP Flight School in Englewood, Colorado.

33. On or around December 2014, Arthur P. Winkelstern borrowed over $70,000 from either Wells Fargo Bank, N.A. or one of its predecessors in interest, to pay for costs incurred while attending the ATP Flight School. (the "DeSantis Wells Fargo Loan," together with the Henry Wells Fargo Loan, the "Wells Fargo Loans").

34. DeSantis co-signed this loan for his brother.

35. The ATP Flight School was not and is not a Title IV accredited institution under the Higher Education Act.

36. On January 15, 2019, DeSantis filed a petition for relief under Chapter 7 of Title 11 of the United States Code in this Court.

37. DeSantis properly scheduled the DeSantis Wells Fargo Loan.

38. On May 7, 2019, this Court entered a discharge order in DeSantis's case.

39. Shortly after discharge, DeSantis began getting calls from Defendant seeking to collect on the DeSantis Wells Fargo Loan. When DeSantis spoke with Defendant and informed it that his debts had been discharged through Chapter 7, Defendant responded that the debt did not

meet the criteria for discharge and was not subject to discharge. Defendant has continued to maintain that DeSantis owes the full amount of the loan.

40. Since that communication, Defendant has continued seeking to collect the DeSantis Wells Fargo Loan from DeSantis through multiple phone calls.

41. These collection efforts, made by Defendant after DeSantis's bankruptcy discharge and after DeSantis informed Defendant that he believed his responsibility for the DeSantis Wells Fargo Loan had been discharged, was made knowingly and willingly in violation of the statutory injunction.

### F. All Class Members Share A Similar Narrative.

42. All Class Members share a similar factual narrative.

43. All Class Members borrowed Consumer Education Loans from Defendant.

44. All Class Members filed for bankruptcy protection in the United States Bankruptcy Court for the Southern District of Texas.[7]

45. At the conclusion of these bankruptcy cases, all Class Members were issued Discharge Orders.

46. The statutory injunction effected by these Discharge Orders extinguished all education-related debt that was not excepted from discharge by 11 U.S.C. § 523(a)(8).

47. Notwithstanding the discharge of these debts, Defendant employed processes, practices, and acts designed to mislead Class Members into believing that their debts were not discharged and inducing them to make payments on extinguished debts.

---

[7] Plaintiffs reserve the right to amend the class definition to extend to all judicial districts in the event that the Fifth Circuit accepts the pending petition for rehearing *en banc* in *In re Crocker*, No. 18-20254, 2019 WL 5304619 (5th Cir. Oct. 21, 2019), as revised (Oct. 22, 2019), and alters its jurisdictional analysis.

48. Defendant has misled Class Members and sought to collect on discharged debts by use of dunning letters, emails, text messages, and telephone calls demanding repayment. In addition, to attempt to compel payment on these discharged debts, Defendant has continued to report these debts as delinquent to the major credit bureaus and has failed to update these credit reports.

49. Defendant has also commenced or continued legal actions against Class Members to induce payment on their discharged debts.

## V.

## CLASS ACTION ALLEGATIONS

50. Pursuant to Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, applicable here pursuant to Federal Rule of Bankruptcy Procedure 7023, Henry and DeSantis bring this action on behalf of themselves and all other persons similarly situated, as representatives of the following class:

51. Citizens of the various states who filed for bankruptcy in United States Bankruptcy Court for the Southern District of Texas[8] and were issued Discharge Orders there since October 17, 2005 (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act), who:

> a) Before filing for bankruptcy, obtained or were co-signers on private Consumer Education Loans from Defendant or its predecessors in interest that were not made under any program funded by a non-profit institution to cover expenses at ineligible institutions as that term is defined in 11 U.S.C. § 523(a)(8)(B) and 26 U.S.C. § 221(d); and

---

[8] *See* n. 7 *supra.*

      b) have never reaffirmed any pre-petition private Consumer Education Loan; and

      c) have nonetheless been subjected to Defendant's policy of attempting to induce payment and/or Defendant's successful inducement of payment on these discharged private Consumer Education Loans.

52. Plaintiffs reserve the right to amend this class definition and/or add subclasses to include or exclude members of the class.

53. As described below, this action satisfies the numerosity, commonality, typicality, superiority, predominance, and adequacy of representation requirements of Rule 23 of the Federal Rules of Civil Procedure.

**A. Numerosity**

54. The persons in the class of plaintiffs are so numerous that joinder of all members is impracticable. In the interest of judicial economy, this dispute should be resolved through the class action vehicle.

55. Upon information and belief, the number of plaintiffs will likely exceed 100. The quantity, identity, and location of Class Members are ascertainable through appropriate discovery and may be identified by the records maintained and possessed by Defendant.

56. The Class Members have been through bankruptcy within the last fifteen years. Upon information and belief, the individual members of the class of plaintiffs, or at least a large portion thereof, lack the means to pursue these claims individually and severally. Defendant has relied on this to effectuate its scheme. In fact, academic research shows that 99.9% of debtors with student loans lack the means to pursue an adversary proceeding to contest non-dischargeability.

**B. Commonality**

57. There are common questions of law and fact affecting the entirety of the class. Specifically, predominant common questions include without limitation: (i) whether the Class

Members' Consumer Education Loans were discharged at the conclusion of their bankruptcy cases by means of the statutory injunction; and (ii) whether Defendant violated the statutory injunction effected by the applicable Discharge Orders by seeking to collect on discharged private education debt.

58. Answers to these common questions will resolve the question of damages shared by each member of the class.

## C. Typicality

59. Plaintiffs' claims against Defendant are representative of those of all Class Members. Specifically, the Wells Fargo Loans are species of Consumer Education Loans originated and serviced by Defendant.

## D. Predominance and Superiority

60. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. The questions include, but are not limited to:

   a) whether the Class Members' Consumer Education Loans were discharged at the conclusion of their bankruptcy cases; and

   b) whether Defendant violated the statutory injunction effected by the applicable Discharge Orders by seeking to collect on discharged Consumer Education Loans.

61. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, with respect to individual Class Members, which would establish inconsistent standards of conduct for Defendant, as well as, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

62.     Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

63.     A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class Members may be obtained from Defendant's records.

**E.  Adequacy of Representation**

64.     Henry and DeSantis will fairly and adequately represent and protect the interests of the members of the class of plaintiffs. Henry's and DeSantis' interests are squarely aligned with those of individual members of the class. Plaintiffs' counsel, Fishman Haygood, LLP; Jones, Swanson, Huddell & Garrison, LLC; the Smith Law Group LLP; The Law Offices of Joshua Kons; and Boies Schiller Flexner LLP, are experienced in class action lawsuits, complex commercial litigation, bankruptcy law and procedure, and student loan litigation.

## VI.

## CLAIMS FOR RELIEF

**Count One: Declaratory Judgment and Injunctive Relief**

65.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

66.     Plaintiffs request a declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that Plaintiffs' and the Class Members' Consumer Education Loans are not non-dischargeable student loans or Qualified Education Loans under section 523(a)(8), and were therefore discharged upon entry of their respective statutory injunctions effected by their Discharge Orders.

67. Plaintiffs request injunctive relief prohibiting Defendant from continuing to seek collection on their and other Class Members' discharged debts.

**Count Two: Violations Of The Statutory Injunction Effected by the Discharge Orders**

68. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

69. Plaintiffs and other Class Members' Consumer Education Loans were discharged pursuant to the statutory injunction effected by the Discharge Orders entered by the various courts because they were unsecured consumer loans and not non-dischargeable student loans under section 523(a)(8).

70. Defendant was notified of the Discharge Orders pursuant to Federal Rule of Bankruptcy Procedure 4004(g).

71. Defendant nonetheless sought to collect on these debts, either directly or indirectly, by use of dunning letters, emails, text messages, telephone calls, negative reports made to the major credit bureaus, failure to update these credit reports, and commencing or continuing legal action to recover the discharged debts in violation of 11 U.S.C § 524.

72. Plaintiffs request that Defendant be cited for contempt and ordered to pay damages in an amount to be determined at trial for the willful violations of the discharge injunctions pursuant to 11 U.S.C § 105 and also request an award of attorneys' fees and costs.

## PRAYER

73. In light of the foregoing, Plaintiffs request that Defendant be cited to appear and judgment be entered against Defendant for:

    a) Declaratory and injunctive relief in the form of a judgment entered to the effect that Plaintiffs' and other Class Members' Consumer Education Loans were discharged upon entry of the applicable statutory injunctions effected by the Discharge Orders;

b) Injunctive relief prohibiting Defendant from continuing to collect on discharged debts;

c) actual damages and monetary sanctions for violations of the statutory injunction effected by the Discharge Orders;

d) restitution and/or disgorgement;

e) attorneys' fees and costs to the fullest extent permitted under the law;

f) prepetition and post-judgment interest; and

g) other such relief as the Court deems just and proper.

Respectfully submitted,

By: */s/ Jason W. Burge*

Adam Corral
SBN (TX) 24080404
CORRAL TRAN SINGH, LLP
440 Louisiana St, Suite 2450
Houston, TX 77002
(832) 975-7300; (832) 975-7301 fax
Adam.corral@ctsattorneys.com

Jason W. Burge (*pro hac vice*)
SBN (LA) 30420
Kathryn J. Johnson
SBN (LA) 36513
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
jburge@fishmanhaygood.com
kjohnson@fishmanhaygood.com

Austin Smith
SBN (NY) 5377254
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017
(917) 992-2121
Austin@acsmithlawgroup.com

Lynn E. Swanson (*pro hac vice*)
SBN (LA) 22650
JONES, SWANSON, HUDDELL & GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(504) 523-2500; (504) 523-2508
Lswanson@jonesswanson.com

Joshua B. Kons (*pro hac vice*)
SBN (IL) 6304853
LAW OFFICE OF JOSHUA B. KONS, LLC
939 West North Avenue, Suite 750
Chicago, IL 60642
(312) 757-2272
joshuakons@konslaw.com

George F. Carpinello
SBN (NY) 1652684
Adam R. Shaw
SBN (NY) 2587467
BOIES SCHILLER FLEXNER LLP
30 South Pearl St., 11th Floor
Albany, NY 12207
(518) 434-0600
gcarpinello@BSFLLP.com
adamshaw@BSFLLP.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 20th day of November, 2019, a true and correct copy of *Plaintiffs' First Amended and Restated Complaint* was served via that Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned proceeding.

*/s/ Jason W. Burge*