# **EXHIBIT A**

# Wells Fargo Collegiate® Loan



## LOAN REQUEST/CONSUMER CREDIT AGREEMENT

Please initial all changes. Do not use correction fluid to make changes.

UID: ███████12362  SID: ███05124

### STUDENT BORROWER INFORMATION

| 1. Last Name | First Name | M.I. | 2. Social Security Number or Tax ID Number | 3. Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|
| WINKELSTERN | ARTHUR | P | ███-██-5119 | ██/██/1992 |

4. Permanent Home Address – Street (required) P.O. Box, City, State, ZIP Code
322 DREAMMAKER WAY, SEDONA, AZ, 86351-9259

| 5. Home Phone Number | 6. Alternative Phone Number (other than Cell) | 7. Cell Phone Number |
|---|---|---|
| (███) ███-0073 | ( ) | (███) ███-0073 |

8. Email Address
IAFFLICTION92@YAHOO.COM

| 9. Citizenship Status | | 10. Total Loan Amount | 11. Interest Rate |
|---|---|---|---|
| [X] U.S. Citizen or National  [ ] Permanent Resident Alien  [ ] Temporary Resident Alien | | $ 73,925.00 | 7.99 % Fixed |
| For Permanent and Temporary Resident Alien Students: A U.S. citizen Cosigner is required. | | | |

| 12. Relationship Discount | 13. School Name | |
|---|---|---|
| [X] Yes  [ ] No | ATP Flight School - Airline Transport Professionals | |

| 14. Graduation Date (mm/dd/yyyy) | 15. Student Borrower Enrollment Period for use of funds (mm/yyyy) (should not exceed 12 months) | 16. Grade Level |
|---|---|---|
| 06/25/2015 | From: 12/2014    To: 06/2015 | Freshman |

### PLEASE READ, SIGN, and DATE BELOW

**NON-NEGOTIABLE CREDIT AGREEMENT " THIS IS A CONSUMER CREDIT TRANSACTION**

I understand that I am not required to fax my signature on nor to sign electronically this Loan Request/Consumer Credit Agreement ("Credit Agreement") and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: **(i)** my fax or electronic signature to be an electronic signature under applicable federal and state law, **(ii)** any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, **(iii)** to conduct business with you by electronic records and electronic signatures, **(iv)** my consent under (iii) to be electronically given under applicable federal and state law, and **(v)** that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code. **THIS IS AN EDUCATION LOAN THAT MUST BE REPAID.**

For purposes of the following notices, "you" and "your" means the Student Borrower and Cosigner, not the Lender.

**NOTICE TO CONSUMER**
1.) Do not sign this agreement before you read it, even if otherwise advised, or if it contains any blank spaces. 2.) You are entitled to a copy of this Credit Agreement. 3.) You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law. You have reviewed the information contained on this Credit Agreement, which includes terms on pages 1 through 6, and certify that it is true and accurate to the best of your knowledge and belief. You understand that Lender will retain this information whether or not this loan is approved. Lender is authorized to check your credit and employment history and to answer questions about Lender's credit experience with you. Lender and/or Lender's agents are also authorized to release any information to the school pertaining to this application and specifically any information gathered in the credit review process. You have read, understand, and agree to the terms of the "Student Borrower's Certification and Consents" printed on page 5 of this Credit Agreement, and you understand and agree that Wells Fargo Bank, N.A. will be your Lender.

By signing below, you (i) acknowledge that you have received an exact copy of this Credit Agreement, (ii) acknowledge that you have separately received an Approval Disclosure providing the terms of your loan offer, and (iii) acknowledge that you have read and understand, and accept the terms of, the loan offer contained in the Approval Disclosure.

**FEDERAL NOTICE TO COSIGNER:**
You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The holder of this Credit Agreement may collect this debt from you without first trying to collect from the borrower. The holder of this Credit Agreement may use the same collection methods against you that may be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record. This notice is not the contract that makes you liable for the debt.

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines or imprisonment.

Notice to Cosigner(s): BY SIGNING THIS CREDIT AGREEMENT BELOW, YOU CERTIFY THAT YOU INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE STUDENT BORROWER FOR THIS LOAN.

CAUTION– IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT. I, THE COSIGNER HAVE READ THE APPLICABLE NOTICE TO COSIGNER.

| Esigned by ARTHUR WINKELSTERN | EFS: ███████████ | 09/30/2014 |
|---|---|---|
| Signature of Student Borrower - ARTHUR P. WINKELSTERN | | Date (mm/dd/yyyy) |
| Esigned by FRANK P. DESANTIS | EFS: ███████████ | 09/30/2014 |
| Signature of Cosigner 1 - FRANK P. DESANTIS | | Date (mm/dd/yyyy) |

| Signature of Cosigner 2 - Not Required | | Date (mm/dd/yyyy) |
|---|---|---|

**MARRIED WISCONSIN RESIDENTS:** My signature confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59 of the Wisconsin Statutes or court decree under Section 766.70 adversely affects the interest of the lender unless the lender, prior to the time that the loan is approved, is furnished with a copy of the marital property agreement, a statement, a decree or has actual knowledge of the adverse provision. If the loan for which I am applying is granted, my spouse will also receive notification that credit has been extended to me  I certify that information concerning my spouse is true and accurate.

| Signature of Student Borrower – if married WI resident | Name of Student's Spouse | Spouse's Address – Street, P.O. Box, City, State, ZIP Code |
|---|---|---|
| | | |

NON-NEGOTIABLE CREDIT AGREEMENT "  THIS IS A CONSUMER CREDIT TRANSACTION
wellsfargo.com/student | 1-800-658-3567

Wells Fargo Education Financial Services is a division of Wells Fargo Bank, N.A.
© 2014 Wells Fargo Bank, N.A. Equal Opportunity Lender  (Rev. 05-2014)

*Wells Fargo Collegiate* Loan
Page 1 of 6

In this Credit Agreement the words "I," "me," "my," and "mine" mean the signed Student Borrower and Cosigner(s), unless the language specifically refers to only one or the other. If more than one person signs this Credit Agreement, each person will be jointly and individually liable for the full amount of the loan. "You," "your," and "yours" mean Wells Fargo Bank, National Association (N.A.), and any other holder of this Credit Agreement. A "Qualified Relationship" means, with respect to one or more persons signing this Credit Agreement, (i) a qualifying Wells Fargo consumer checking account (ii) a prior student loan (federal or private) made by Wells Fargo, or (iii) Wells Fargo employment (each of (i), (ii), or (iii) measured on the day my Final Loan Disclosure is issued).

### A. PROMISE TO PAY

1. I promise to pay you, or a subsequent holder, according to the terms of this Credit Agreement, which includes terms on pages 1 through 6 ; the sum of the Total Loan Amount (which includes an amount equal to the Loan Origination Fee described in Section E of this Credit Agreement), or any lesser amount determined under applicable law that is disbursed for my benefit or advanced to me (together the "Final Loan Amount"); and as further set forth in this Credit Agreement, interest on the Final Loan Amount; interest on any unpaid accrued interest added to the Final Loan Amount; late charges; reasonable costs of collection and attorneys' fees; and other costs and charges (see Sections F and I), all in lawful money of the United States of America (see Section M.11).

2. The proceeds of this loan will be used only for post-secondary educational and other qualified expenses incurred by the signed Student Borrower at the school listed on this Credit Agreement (the "School"). I understand that when you receive this signed Credit Agreement, you are not agreeing to lend me money and you have the right not to make a loan or to lend an amount less than the Total Loan Amount as provided under applicable law. For example, but without limiting your rights, (i) you can lower the Total Loan Amount based on information received from the School after I provide this signed Credit Agreement, and (ii) you can refuse to disburse loan proceeds on my behalf or to me if doing so is prohibited by law. I agree to accept an amount less than the Total Loan Amount and to repay that portion of the Total Loan Amount that you actually lend to me (i.e., Final Loan Amount) in accordance with applicable law along with interest and all other amounts I owe (see Section A.1). You have the right, at your discretion, to disburse my loan through an agent and/or in multiple installments. I understand that applicable law prohibits you from disbursing loan proceeds to me or to the School on my behalf until you receive a Private Education Loan Applicant Self-Certification form signed by the Student Borrower.

3. After you receive this signed Credit Agreement you will send me a Final Disclosure as required by law. The Final Disclosure you provide me will identify my Final Loan Amount, fee amounts, interest rate, and other important loan terms. The Final Disclosure is incorporated herein by this reference. My contractual obligation on this Credit Agreement will begin when loan proceeds are disbursed to the School on my behalf or to me following expiration of the pre-disbursement cancellation period identified in the Final Disclosure. I will promptly review the Final Disclosure and notify you in writing if I have any questions. If any information on the Final Disclosure conflicts with the information on the Approval Disclosure and/or the Credit Agreement, the information on the Final Disclosure governs. If I am not satisfied with the terms of my loan as disclosed in the Final Disclosure, I may cancel this loan and all disbursements as provided in Section B. I will show my agreement to the terms of the loan as set forth in this Credit Agreement and in the Final Disclosure by doing any of the following: (a) endorsing the disbursement check; (b) acknowledging the receipt of loan proceeds by electronic funds transfer; (c) if I am the Student Borrower, attending the School; or (d) otherwise allowing the loan proceeds to be used by or on behalf of the Student Borrower without objection. I authorize you to increase my Final Loan Amount and issue a new Final Disclosure to me in accordance with school certification you receive after loan proceeds are disbursed indicating increased loan eligibility for the same period. I may cancel such increased amount as set forth in Section B. I agree that my Promise to Pay under this Credit Agreement applies to such increased Final Loan Amount.

### B. CANCELLATION

1. **Pre-Disbursement** – To cancel this loan before loan proceeds are disbursed to the School on my behalf or to me, I must call you at the phone number listed for such purpose in the Final Disclosure by the deadline for loan cancellation specified in the Final Disclosure.

2. **Post-Disbursement** – To cancel this loan after loan proceeds have been disbursed to the School on my behalf or to me, I must give you a written cancellation notice within fifteen days of receiving the Final Disclosure and take the following steps: not endorse or cash any loan disbursement check, notify the School of the loan cancellation, and ensure that any loan disbursements are returned to you. If the loan is so canceled, you will not charge me any interest for the loan. If funds are transmitted electronically, I will instruct the School, within fifteen days of receipt by me of the Final Disclosure, to return the funds to you. If I cancel after receiving a Final Disclosure reflecting all disbursements for my loan, I cancel all disbursements. If I give notice of cancellation after disbursement of loan proceeds but do not cause the return of the disbursement as stated above, the disbursement will not be canceled and I will be in default of this Credit Agreement. I hereby grant you a security interest to secure my obligations under this Credit Agreement in all amounts owed to me by the School.

### C. INTEREST

1. **Accrual of Interest** – Beginning on the first disbursement date, interest will be calculated at the Applicable Rate, described further below, and charged on the Final Loan Amount (to the extent it has been disbursed and is unpaid), and on any unpaid interest later added to the Final Loan Amount (see Section C.4). Interest will be charged on the outstanding Final Loan Amount until the date this Credit Agreement is paid in full. Interest will be calculated on a daily simple interest basis. This means that interest on my outstanding principal balance is calculated each day. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the actual number of days in that calendar year. Normally, a portion of each scheduled payment I make will be applied to interest and principal. Because interest accrues daily, my payments will be allocated between principal and unpaid interest as of the day each payment is received rather than on the scheduled due date of the payment. Generally, if I make my scheduled payments –

   - Before their due date, I will pay less interest and more quickly pay off my principal balance, or
   - After their due date, I will pay more interest and more slowly pay off my principal balance.

   My final payment amount will depend upon my payment record. If I make scheduled payments after their due date, my final payment amount could be substantially higher than my regularly scheduled payment.

2. **Applicable Rate** – My Applicable Rate is either a Variable or Fixed interest rate as listed in item #11 on page 1 of your Credit Agreement.

   (a) **Variable Rate** – If item #11 on page 1 of your Credit Agreement lists a "Variable Rate," then the following provisions apply:
   - **How the Variable Rate is Determined** – The Variable Rate is equal to the Prime Rate ("Rate Index"), described below, plus a specific margin of 1.24% ("Margin"). The Variable Rate will change in accordance with the provisions for Change Dates (described below), but the Variable Rate will never be less than 4.49% (the Variable Rate Floor), and will never be more than 18% (the Variable Rate Ceiling), regardless of changes to the Rate Index. The Variable Rate will change monthly on the first day of each month ("Change Date") if the Rate Index changes. In no event will the Variable Rate exceed the maximum interest rate allowed by law for a national bank located in South Dakota with South Dakota as its home state. Your starting Variable Rate is listed in item #11 on page 1 of this Credit Agreement.
   - **Rate Index** – The following describes the Rate Index applicable to this loan for any month beginning on a Change Date (or for any shorter period beginning on any Disbursement Date and ending on the last day of a month):
     - **Prime Rate** – The highest Prime Rate published in *The Wall Street Journal* "Money Rates" table on the last business day of the preceding month (e.g., Prime Rate published on April 30, 2012 , would take effect on May 01, 2012, for the monthly period from May 01, 2012 , through and including May 31, 2012 ). If *The Wall Street Journal* is not published or the Prime Rate is not stated, then the Prime Rate will be the applicable Prime Rate next published thereafter. If the Prime Rate is discontinued or substantially altered, you may (at your option) choose a comparable substitute for the Prime Rate, which will then be used in its place.
     - **One-Month LIBOR Rate** – The LIBOR means the London Interbank Offered Rate. The One-Month LIBOR Rate in effect for each monthly period (from the first day of one month through and including the last day of the month) will be the highest One-Month LIBOR rate published in *The Wall Street Journal* "Money Rates" table on the last business day of the preceding month (e.g., 1-Month LIBOR published on April 30, 2012 , would take effect on May 01, 2012 , for the monthly period from May 01, 2012 , through and including May 31, 2012 ), rounded to the nearest 1/1000. If the One-Month LIBOR Rate is discontinued or substantially altered, you may (at your option) choose a comparable substitute for the One-Month LIBOR Rate, which will then be used in its place.
     - **13-WEEK TREASURY BILL** – The 13-WEEK TREASURY BILL published in *The Wall Street Journal* "Money Rates" table on the last business day of the preceding month (e.g., 13-week Treasury Bill published on April 30, 2012 , would take effect on May 01, 2012 , for the monthly period from May 01, 2012 , through and including May 31, 2012 ). If *The Wall Street Journal* is not published or the 13-WEEK TREASURY BILL Rate is not stated, then the 13-WEEK TREASURY BILL Rate will be the applicable 13-WEEK TREASURY BILL Rate next published thereaf-

NON-NEGOTIABLE CREDIT AGREEMENT "  THIS IS A CONSUMER CREDIT TRANSACTION
wellsfargo.com/student | 1-800-658-3567

Wells Fargo Education Financial Services is a division of Wells Fargo Bank, N.A.
© 2014 Wells Fargo Bank, N.A.  Equal Opportunity Lender  (Rev. 05-2014)

*Wells Fargo Collegiate* Loan
Page 2 of 6

ter. If the 13-WEEK TREASURY BILL Rate is discontinued or substantially altered, you may (at your option) choose a comparable substitute for the 13-WEEK TREASURY BILL Rate, which will then be used in its place.
   (b) **Fixed Rate** – If item #11 on page 1 of this Credit Agreement lists a "Fixed Rate," then an annual rate of 7.99% applies to this Loan.
3. **Relationship Discount** – If item #12 on page 1 of this Credit Agreement is marked "yes," then the following provision applies:
   **Wells Fargo Relationship Discount** – The Applicable Rate for this Loan listed in item #11 on page 1 of this Credit Agreement includes a Wells Fargo Relationship Discount because one of more persons signing this Credit Agreement have a Qualified Relationship. In addition, if my Applicable Rate is a –
   - Variable Rate, I understand that the Margin listed in Section C.2(a) above reflects the Wells Fargo Relationship Discount;
   - Fixed Rate, I understand that the rate listed in Section C.2(b) above reflects the Wells Fargo Relationship Discount.
   
   I will qualify for only one Wells Fargo Relationship Discount regardless of the number of Qualified Relationships I have. I should ask you to identify my specific Qualified Relationship(s) if I am unsure of the name(s). If the Qualified Relationship is not maintained, the Wells Fargo Relationship Discount will not be terminated and my Applicable Rate will not increase.
4. **Capitalization** – I understand that you will add all accrued and unpaid interest to the Final Loan Amount ("capitalized interest") on the last day of the Interim Period and at the end of any deferral/extension period. In all cases, the sum is thereafter considered the Final Loan Amount, and interest will accrue on this new Final Loan Amount.

D. **TERMS OF REPAYMENT**
1. **Interim Period** – The "Interim Period" will begin on the first disbursement date and will end upon the earliest of the following events:
   (a) 6 months after I cease to be enrolled at the School, unless I re-enroll in another school eligible under Title IV of the Higher Education Act or another eligible school approved by you within that 6 month period, or
   (b) 7 years after the date of my first disbursement.
   
   I may but am not required to make principal and interest payments, or interest only payments during the Interim Period. You will add unpaid accrued interest and any other charges to the Final Loan Amount on the last day of the Interim Period. If I choose to make voluntary payments during the Interim Period, I understand that all accrued and unpaid interest must be paid before the principal will be reduced.
2. **Repayment Period** – The "Repayment Period" will begin on the day after my Interim Period ends and will continue for up to 180 months. You will disclose my Repayment Period to me on the Final Disclosure. I will make consecutive monthly payments of principal and interest during the Repayment Period in the amounts and on the payment due dates shown on my statements until I have paid all of the principal and interest and any other charges I may owe under this Credit Agreement. I understand that during the Repayment Period you may change the monthly payment due date of future payments for your convenience in processing payments or in order to coordinate the due dates of all of my loans processed by you, and such change shall be deemed accepted by me unless I object in writing within 10 days of receiving notice of such change.
3. **Standard Repayment Term** –
   (a) **Variable Rate** – If my Applicable Rate is a Variable Rate, then, subject to the terms of Section D.4, I will repay my loan in consecutive installments of principal and interest calculated at least annually to equal the amount necessary to amortize the unpaid principal balance of my loan (as of the date of calculation) in equal monthly installments of principal and interest at the Variable Rate then in effect over the number of months remaining in the Repayment Period.
   (b) **Fixed Rate** – If my Applicable Rate is a Fixed Rate, then, subject to the terms of Section D.4, I will repay my loan in consecutive installments of principal and interest calculated to equal the amount necessary to amortize the unpaid principal balance of my loan (as of the date of calculation) in equal monthly installments of principal and interest at the Fixed Rate.
   (c) **Paying More Than the Statement Amount** - I have the right (as further set forth in Section G), whether following a recalculation of my payment amount or at any other time, to make monthly payments in an amount that is greater than the amount shown on my statements.
4. **Deferral/Extension and Other Repayment Modifications** –
   (a) **Alternative Repayment Term** – You may from time to time, at your discretion, offer alternative repayment options on this loan. Any Cosigner under this Credit Agreement agrees that you may permit the Student Borrower to select any such alternative option without notice to, or consent from the Cosigner, and that such selection shall not release the Cosigner from his/her obligations under this Credit Agreement.
   (b) **Deferral** – You may, at your absolute discretion, grant a deferral/extension which will suspend principal and/or interest payments during a short-term hardship period pertaining to the Student Borrower. I understand that (i) during a deferral/extension period, interest will continue to accrue and I will remain responsible for paying such interest, and (ii) unpaid interest that accrued during my deferral/extension period will be capitalized (see Section C.4). If I have multiple education loans you hold, I understand and agree that (i) you may, in your sole discretion and without notice to me, apply an administrative deferral to align the payment due dates of all such loans when they enter repayment, (ii) during this deferral period, interest will continue to accrue on the loans included in the deferral and I will remain responsible for paying such interest, and (iii) unpaid interest will be capitalized (see Section C.4). Any Cosigner of this Credit Agreement agrees that (i) any in-school deferral/extension will be based on the enrollment status of the Student Borrower, and (ii) the Student Borrower may agree to any deferral or other modification of the repayment schedule and that such agreement will not release the Cosigner from his/her obligations under this Credit Agreement.
5. **Amounts Owing at the End of the Repayment Period** – I may owe additional principal, interest, and late charges at the end of the Repayment Period as a result of the following:
   (a) **Variable Rate Loan** – Since my loan payment is subject to change at least annually, and my interest rate can change (including increases) monthly, my monthly payment may not be sufficient to satisfy all the monthly outstanding interest and in such case will not reduce the principal balance.
   (b) **Variable Rate Loan or Fixed Rate Loan** – Since interest accrues daily upon the unpaid principal balance of my loan, if I make payments after my payment due date, my payment may not satisfy all of the interest owing and in such case will not reduce the principal balance.
   
   In such cases, you will increase the amount of my last monthly payment to an amount necessary to repay my loan in full.
6. **Minimum Repayment** – Notwithstanding Sections D.3 and D.4, during the Repayment Period I agree to pay at least $600.00 each year (principal and/or interest) or the unpaid balance on this Credit Agreement, whichever is less.
7. **Payments** – Payments will be applied (i) first to late charges and other charges, then to accrued interest, and the remainder to principal, or (ii) unless prohibited by law, in any other order you determine.

E. **LOAN ORIGINATION FEE**
At the time of each loan disbursement, you will charge me a Loan Origination Fee equal to 0.00% of the principal loan amount disbursed. Both my Approval Disclosure and my Final Disclosure will identify the dollar amount of the Loan Origination Fee. That amount will be included in the Total Loan Amount on my Approval Disclosure and in the Final Loan Amount on my Final Disclosure. A proportionate amount of the Loan Origination Fee will be added to the amount of each disbursement. At the time any disbursement is issued, the Loan Origination Fee amount will be deducted from the disbursement amount. If for any reason you do not withhold my Loan Origination Fee from any disbursement and I have not already paid that fee, I agree to pay it when you bill me for it. To the extent permitted by law, and unless I cancel any disbursement in accordance with Section B, I will not be entitled to any reimbursement of the Loan Origination Fee.

F. **LATE PAYMENT AND OTHER CHARGES**
1. I will pay a late charge of $28 if I fail to make any part of an installment payment within 10 days after it becomes due. I will pay only one late fee for any payment, regardless of the number of days it is late.
2. <u>Other Charges:</u> I understand that you may offer additional services from time to time and you will disclose in advance the cost of the additional services before I agree to pay for the charge.

G. **RIGHT TO PREPAY**
**Prepayment** – I have the right to prepay this loan in part or in full at anytime without penalty. I also understand and agree that partial prepayment of the loan does not, unless indicated otherwise in my billing statement, relieve me of my obligation to continue making regularly scheduled monthly payments on the remaining balance of the loan. **Interest continues to accrue on the unpaid balance of the loan regardless of the amount I prepay.**

H. **WHOLE LOAN DUE**
My failure to receive a billing statement and any other written payment notices from you does not relieve me of my responsibility and obligation of making my required loan payments in accordance with the terms and conditions of the Credit Agreement. You may report my payment history to credit reporting agencies. If I default, I will be required to pay interest on this loan accruing after default at the same rate of interest applicable to this loan prior to my default, subject to any rate increase under Section C.3 (if applicable). The interest rate after default will be subject to adjustment in the same manner as before default. Subject to applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement are due and payable at once and to cease to make further disbursements to me (subject to any applicable law which may give me a right to cure my default), if any one or more of the following events of default occur:
1. I fail to make the full amount of any monthly payment to you within 10 days

NON-NEGOTIABLE CREDIT AGREEMENT " THIS IS A CONSUMER CREDIT TRANSACTION
wellsfargo.com/student | 1-800-658-3567

Wells Fargo Education Financial Services is a division of Wells Fargo Bank, N.A.
© 2014 Wells Fargo Bank, N.A.  Equal Opportunity Lender  (Rev. 05-2014)

*Wells Fargo Collegiate* Loan
Page 3 of 6

after it is due; or
2. I fail to notify you in writing of a change in my name, address, telephone number, or school enrollment status within 10 days after a change occurs; or
3. I break any of my other promises in this Credit Agreement; or
4. Any bankruptcy proceeding is begun by or against me, or I assign any of my assets for the benefit of my creditors; or
5. I make any false, misleading, or materially incomplete statement in applying for this loan, or any other student or education loan, or to you at any time during the Interim Period or Repayment Period; or
6. I am in default on any loan(s) I may already have with you or on any loan(s) I may have with you in the future; or
7. I am declared legally incompetent or incapacitated; or
8. You reasonably believe that I am not paying my debts as they become due or any other event occurs that in your judgment significantly decreases the likelihood of my performance.

Idaho, Iowa, Kansas, Maine, Missouri, Nebraska, and South Carolina Residents: The following events of default apply (instead of those described in 1-8 above):
1. I fail to make any monthly payment to you within 10 days after its due date; or
2. I fail to observe any other covenant of this loan transaction which materially impairs my prospect to pay amounts due under this loan transaction.

Wisconsin Residents: The following events of default apply (instead of those described in 1-8 above):
1. I permit to be outstanding an amount exceeding one full payment that has remained unpaid for more than 10 days after its scheduled or deferred due date or I have not paid my first payment or my last payment within 40 days of its scheduled or deferred due date; or
2. I fail to observe any other covenant of this loan transaction, breach of which materially impairs my ability to pay amounts due under the loan transaction.

**I. COLLECTION COSTS AND ATTORNEYS' FEES**

Unless prohibited by law, I agree to pay you all amounts, including reasonable collection agency, attorneys' fees, court costs, and other collection costs which you incur in enforcing the terms of this Credit Agreement. This includes, subject to any limits or prohibitions under applicable law, your reasonable attorneys' fees and expenses if you refer the matter to an attorney and whether or not there is a lawsuit or arbitration, including without limitation, all reasonable attorneys' fees and legal expenses for appeals, anticipated post-judgment collection services and bankruptcy proceedings (such as case monitoring, proof of claim and efforts to modify or vacate any alternative stay) plus any court costs and other sums provided by law.

**J. NOTICES**
1. I will send written notice to you within 10 days after any change in my name, street address, mailing address, email address, telephone number, cell phone number, or school enrollment status (e.g., if I withdraw from the School or transfer to another school participating in this loan program), or the death of, or a bankruptcy affecting, any Cosigner.
2. Any notice required to be given to me by you will be effective when mailed by first class mail to the latest address you have for me, or sent electronically to the internet (i.e. email) address you have for me as reflected in your current records, or sent electronically to me through *Wells Fargo Online*® Messages & Alerts.

**K. CREDIT REPORTING AND INFORMATION SHARING**
1. **You may report information about my account to credit bureaus and/or consumer reporting agencies. Late payments, missed payments, or other defaults on my account may be reflected in my credit report.**
2. I understand that the reporting of information about my account to credit reporting agencies may adversely affect my credit rating and my ability to obtain other credit. You may also provide the School with certain personally identifiable information about me (such as my Social Security Number and my loan ID number) and report the status of my loan and my payment history, including information about a late payment, missed payment or other defaults, to the School and others in accordance with applicable law.
3. I authorize you to gather and share from time to time credit-related, employment and other information about me (including any information from this Credit Agreement or about this loan, my other education loans/ accounts, or my payment history) from and with consumer reporting agencies, the School and others in accordance with applicable law. Without limiting the preceding sentence, I authorize you to disclose to the Student Borrower, and/or any Cosigner in connection with this transaction or any future transaction with you regarding this loan program, all information (including status information and non-public personal information) of the Student Borrower and/or any Cosigner you obtain in connection with this Credit Agreement. I understand that a credit report is obtained for this loan request. If you agree to make this loan to me, a consumer credit report may be requested or used in connection with renewals, modifications, or extensions of any credit for which I have applied, reviewing my loan, taking collection action on my loan, or legitimate purposes associated with my loan. If I live in a community property state, I authorize you to gather credit-related information from others about my spouse. If I ask you, you will tell me if you have requested information about me (or about my spouse, if applicable) from a consumer reporting agency and provide me with the name and address of any agency that furnished you with a report.

**L. STATE LAW NOTICES**

Each of the following notices applies only to residents of the state indicated: **ARIZONA RESIDENTS:** I agree to pay an effective rate of interest equal to the rate of interest applicable to this Credit Agreement, as set forth in Section C above, plus any additional rate of interest resulting from any other fees or charges paid or payable by me in connection with this Credit Agreement that may be deemed to be interest under applicable law. **CALIFORNIA RESIDENTS:** I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If my application is denied or I refuse your counter-offer and your decision was based, in whole or part, on information in a consumer credit report, I have the right to obtain a free copy of the report from the consumer reporting agency within 60 days. I have the right to obtain a copy of my consumer credit report from any other credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right to dispute the accuracy or completeness of any information in a consumer credit report furnished by any agency. **CALIFORNIA and UTAH RESIDENTS:** As required by California and Utah law, I am hereby notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill the terms of my credit obligations. **GEORGIA RESIDENTS:** I waive any right to require the Lender to take action against the principals as provided in O.C.G.A. §10-7-24. **IOWA RESIDENTS:** If my Final Loan Amount is $25,000 or less, this is a consumer credit transaction. **IOWA, KANSAS, and NEBRASKA RESIDENTS:** NOTICE TO CONSUMER 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law. **MAINE, NEW YORK, RHODE ISLAND, and VERMONT RESIDENTS:** You may obtain a consumer report (credit report) in connection with this loan application and in connection with any updates, renewals, or extensions of any credit as a result of this application. If I request, I will be informed whether or not consumer reports were obtained, and if reports were obtained, I will be informed of the names and addresses of the consumer reporting agencies (credit bureaus) that furnished the reports. You also may obtain a consumer report (credit report) in connection with the review or collection of any loan made to me as a result of this application or for other legitimate purposes related to any such loan. **MARYLAND RESIDENTS:** You elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland only to the extent not inconsistent with 12 U.S.C. §85 and related regulations and opinions, which you expressly reserve. **INDIANA and MAINE RESIDENTS:** The provisions of this Credit Agreement regarding the payment of collection agency costs and court costs and where lawsuits must be filed do not apply to Maine or Indiana residents. **MISSOURI RESIDENTS:** ORAL LOAN AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING REPAYMENT OF DEBT, INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT, ARE NOT ENFORCEABLE. TO PROTECT ME (BORROWER(S)) AND YOU (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT. **NEVADA RESIDENTS:** This is a loan for study. **NEW JERSEY RESIDENTS:** The section headings of this Credit Agreement are a table of contents and not contract terms. Portions of this Credit Agreement with references to actions taken to the extent of "applicable law" apply to acts or practices that New Jersey law permits or requires. In this Credit Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law. **OHIO RESIDENTS:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law. **TEXAS RESIDENTS:** If you are in default, we may require you to repay the entire unpaid balance principal and any accrued interest at once. We don't have to give you notice that we are demanding or intend to demand immediate payment of all that you owe.

**VERMONT RESIDENTS: NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS THE LEGAL RIGHT TO COLLECT FROM YOU.**

**M. ADDITIONAL AGREEMENTS**

NON-NEGOTIABLE CREDIT AGREEMENT " THIS IS A CONSUMER CREDIT TRANSACTION
wellsfargo.com/student | 1-800-658-3567
Wells Fargo Education Financial Services is a division of Wells Fargo Bank, N.A.
© 2014 Wells Fargo Bank, N.A. Equal Opportunity Lender   (Rev. 05-2014)
*Wells Fargo Collegiate* Loan
Page 4 of 6

1. **Unless prohibited by applicable law, this Credit Agreement, as well as your rights and duties and my rights and duties regarding this Credit Agreement, will be governed by and interpreted in accordance with applicable federal laws and the laws of the State of South Dakota, without regard to conflict of law rules. I acknowledge that this choice of law is made because you are a national banking association with your main office located in South Dakota, and to insure uniform procedures and interpretation for all customers no matter where they reside.**
2. By accepting past due payments you do not waive or affect any right to accelerate this Credit Agreement. Unless prohibited by applicable law, I waive notice of dishonor, notice of protest, presentment, demand for payment, and all other notices or demands in connection with the delivery, acceptance, performance, default or enforcement of this Credit Agreement. My responsibility for repayment of the loan evidenced by this Credit Agreement is unaffected by the liability of any other person to me or to you. I consent to any and all extensions, renewals, or releases of any party liable upon this loan or any other loan I have with you or waiver or modification that may be granted by you, all without affecting or releasing me from such loans.
3. If any provision of this Credit Agreement is held invalid or unenforceable, in whole or in part, that provision shall be considered omitted from this Credit Agreement without affecting the validity or enforceability of the remainder of this Credit Agreement.
4. Except as provided in Section M.14, any provision of this Credit Agreement may only be modified if jointly agreed upon in writing by you and me. Any modification will not affect the validity or enforceability of the remainder of this Credit Agreement.
5. I understand that this loan is a Qualified Education Loan and as such, will not be automatically discharged in bankruptcy. In order to discharge a loan in bankruptcy, I must prove undue hardship in an adversary proceeding before the bankruptcy court. I further understand that if any party signing this Credit Agreement is affected by a bankruptcy filing, you may cease all communications with me for any time period required by applicable bankruptcy law.
6. I may not assign this Credit Agreement or any of its benefits or obligations, and my obligations under this Credit Agreement will be binding on my estate. You may sell, transfer, or assign this Credit Agreement at any time without notice to me. The terms and conditions of this Credit Agreement apply to, bind, and inure to the benefits of your successors and assigns.
7. You may delay or fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time or on any future occasion. All waivers must be in writing.
8. Without losing any rights under this Credit Agreement, you may accept late payments, partial payments, post-dated checks, or any form of payment marked "paid in full" or containing any other restrictive endorsement. Unless I enter into an express written agreement with you, no restrictive endorsement on any payment shall constitute an accord and satisfaction of or a waiver of any rights we have to receive the total amount due under this Credit Agreement.
9. **Important Notice to Our Customers Regarding Communications –** I agree, in order for you to service the account or to collect any amounts I owe, you may from time to time make calls and/or send text messages to me at any telephone number(s) associated with my account, including wireless telephone numbers that could result in charges to me. The manner in which these calls or text messages are made to me may include, but is not limited to, the use of prerecorded/artificial voice messages and/or an automatic telephone dialing system. I further agree that, in order for you to service the account or to collect any amounts I owe, you may send emails to me at any email address I provide to you.
10. I fully understand that failure to complete or dissatisfaction with the educational program undertaken by the Student Borrower does not relieve me of any obligation pursuant to this Credit Agreement. I understand and acknowledge that you do not in any way endorse, promote, or make any representations concerning any school including without limitation to the school. It is my responsibility to determine the quality of the school.
11. All dollar amounts stated in this Credit Agreement are in United States dollars. I will make all payments in United States dollars with no deduction for currency exchange.
12. Death or Disability-Notwithstanding any other section of the Credit Agreement, I understand this loan will be discharged if (i) a death certificate or other documentation of the Student Borrower's death is submitted in a form acceptable to you, or (ii) a physician's certification that the Student Borrower is totally and permanently disabled or other documentation of the Student Borrower's total and permanent disability is submitted in a form acceptable to you.  If any other person signing this Credit Agreement (i.e. other than the Student Borrower) dies or becomes permanently disabled while any amount due under this Credit Agreement remains unpaid, I am still obligated to repay this loan.  For purposes of this Credit Agreement, "totally and permanently disabled" means that the Student Borrower is unable to work and earn money because of an injury or illness that (i) is expected to continue indefinitely or result in death, and (ii) did not exist at the time the Credit Agreement was signed.
13. By signing this Credit Agreement, to the extent permitted by applicable law, I hereby ratify, confirm, and acknowledge the validity of all prior Promissory Notes and/or Credit Agreements I have signed with you for this loan program or for any other private education loan program. I intend and agree that all such Promissory Notes and/or Credit Agreements shall be binding on me. The consideration for this affirmation is the new credit extended by you to me under this Credit Agreement.
14. All parties to this Credit Agreement agree to fully cooperate and adjust all typographical, computer, calculation, or clerical errors discovered in any or all of the loan documents including the Credit Agreement, Approval Disclosure, and Final Disclosure. In the event this procedure is used, all parties involved will be notified and receive a corrected copy of the changed document.
15. If I fax my signature(s) on the signature page of this Credit Agreement back to you and keep the copy I signed, I understand that under federal law the fax you receive will be an original of the signature page of this Credit Agreement. You and I agree that all copies of this Credit Agreement (including the fax you receive and the copy I retain) taken together shall constitute a single original agreement.
16. (a) If I sign this Credit Agreement electronically, then: (i) You agree to keep an electronic record of the signed Credit Agreement and provide a printed copy to me upon request, and (ii) I agree to download and/or print a copy of this Credit Agreement for my records when I sign it. I understand and agree that my electronic signature will be just as valid as my handwritten signature on a paper document.
    (b) I agree that this Credit Agreement may be signed separately by each Student Borrower or Cosigner in multiple counterparts, each of which may be either electronic or on paper. I agree that any electronic or printed copy of a signed counterpart of this Credit Agreement will be treated as an "original" for all purposes, including any legal action to collect amounts that I owe.
17. If any of the charges on the loan I receive under this Credit Agreement exceed the amount permitted to be charged by the law that governs this Credit Agreement, then such charges will be reduced to such permitted amount and any excess already collected will be applied as a partial prepayment of principal.
18. If this Credit Agreement is executed by more than one person (each a "borrower"), each borrower agrees that any communication between you and any of the borrowers will be binding on all of the borrowers and that the provisions of this Credit Agreement will apply to all borrowers individually and collectively.
19. **For purposes of this Section M.19 only, "I," "me," and "my" refer to the Cosigner only.** My obligation under this Credit Agreement is unconditional and absolute. I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might be entitled by law as a guarantor of the Student Borrower's obligations hereunder. I waive all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation, and exoneration). It shall not be necessary for you to resort to or exhaust your remedies against the Student Borrower before calling upon me to make repayment. As Cosigner, I agree that if the Student Borrower is released from liability on this loan for any reason, including infancy, I hereby consent to such release and to my continued liability for this loan after such release. I acknowledge that I have read, understand, and agree to the terms of the Federal Notice to Cosigner on page 1 of this Credit Agreement.
20. To the extent permitted by applicable law, you have the right to apply money from any of my deposit account(s) with you to pay all or a portion of any amount overdue under this Credit Agreement.

**N. STUDENT BORROWER'S CERTIFICATION AND CONSENTS**

I declare that the following is true and correct. I certify that the information contained in my Credit Agreement for this loan is true, complete and correct to the best of my knowledge and belief, and is made in good faith. I certify that I am a citizen or Permanent Resident Alien of the United States of America, or that I am a Foreign National applying with a qualified Cosigner(s). I understand this is a private, non-federal student loan and I also certify that I have separately applied for all federal loans that I am eligible to receive. I understand and agree that the Lender will be Wells Fargo Bank, N.A. I hereby authorize the School to pay to you any refund which may be due to me up to the amount of this loan. I certify that the proceeds of this loan will be used for educational expenses at the School named and for the enrollment period stated on the Credit Agreement. I understand that I must immediately repay any funds that I receive which cannot reasonably be attributed to meeting my educational expenses related to attendance at the School for the enrollment period requested. At your option, I understand that you may either electronically transmit funds to the School to be applied to my account or if you issue check(s), I authorize you to issue a check made payable to me, payable to the School, or jointly payable to me and the School, and send it to the School. If the funds are electronically transmitted, I hereby authorize the School to transfer funds to my student ac-

NON-NEGOTIABLE CREDIT AGREEMENT "  THIS IS A CONSUMER CREDIT TRANSACTION
wellsfargo.com/student | 1-800-658-3567

Wells Fargo Education Financial Services is a division of Wells Fargo Bank, N.A.
© 2014 Wells Fargo Bank, N.A.  Equal Opportunity Lender  (Rev. 05-2014)

*Wells Fargo Collegiate* Loan
Page 5 of 6

count at the School. I also certify the following: I have read the material explaining the loan program that has been provided to me. I understand the provisions of the loan program, my responsibilities, and my rights under this loan program. I certify that I am not now in default on a Federal Perkins Loan, a Federal Stafford Loan, a Federally Insured Student Loan, a Federal Supplemental Loan for Students (SLS), a Federal PLUS Loan, an Income Contingent Loan, a Federal Consolidation Loan, a Federal Direct Loan, or any other education loan received for attendance at any school.

**I further authorize the School or any other school that I may attend to (i) receive, provide, and confirm information from and with you regarding my attendance, financial aid, or status as may be relevant to consideration of this Credit Agreement and (ii) release to you and your agents and any insurer and its agents any requested information pertinent to this loan (e.g., employment, prior loan history, enrollment status, current address). For purposes of learning my current address and telephone number, I authorize you and your agents and any insurer and its agents to release information and make inquiries to the individual(s) I provided as a reference as part of my application or otherwise given you in connection with this loan.**

**O. FTC NOTICE**
The following Notice applies only to loans made to finance educational expenses at for-profit schools or schools otherwise subject to the Federal Trade Commission Holder Rule (16 C.F.R. Section 433.2, as amended), and only if the "Amount Financed" shown on the Disclosure Statement is $25,000 or less:
**NOTICE: ANY HOLDER OF THIS CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SCHOOL WITH RESPECT TO THE LOAN. RECOVERY UNDER THIS PROVISION SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR ON THE LOAN.**

**P. DISPUTE RESOLUTION PROGRAM: ARBITRATION AGREEMENT**
("I," "me" and "my" refers individually and collectively to each person signing this Credit Agreement; "you" and "your" refers to Wells Fargo Bank, N.A.; "Parties" refers to you and me together.)

1. **Binding Arbitration** – Any party covered by this Agreement, including the Student Borrower, any Cosigner, and Wells Fargo Bank, N.A., may elect at any time to have any Dispute of any kind resolved by binding tion. Upon demand by you or me, the Dispute will be resolved through the arbitration process as set forth in this section. You agree, however, not to initiate an arbitration proceeding solely to collect a consumer debt. A "Dispute" is any unresolved disagreement between you and me. It includes any disagreement relating in any way to the Credit Agreement, the loan or related services, accounts or matters; to my use of any of your banking locations or facilities; or to any means that I may use to access your locations and facilities or any of your products or services. It includes claims based on broken promises or contracts, torts, or other wrongful actions. It also includes statutory, common law, and equitable claims. "Disputes" include disagreements about the meaning, application or enforceability of this Arbitration Agreement. This Arbitration Agreement shall survive the payment of my loan and the termination of the Credit Agreement. **I AGREE THAT BY SIGNING THE CREDIT AGREEMENT, YOU AND I ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC COURT.** As the sole exception to this Arbitration Agreement, you and I retain the right to pursue in small claims court any Dispute that is within that court's jurisdiction. If either you or I fail to submit to binding arbitration following lawful demand, the party so failing bears all costs and expenses incurred by the other in compelling arbitration.

2. **Arbitration Procedure; Severability** – You or I may submit a Dispute to binding arbitration at any time, regardless of whether a lawsuit or other proceeding has been previously commenced. **NEITHER YOU NOR I SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.** Each arbitration, including the selection of the arbitrator(s), shall be administered by the American Arbitration Association (AAA), or such other administrator as you and I may mutually agree to (the AAA or such other mutually agreeable administrator to be referred to hereinafter as the "Arbitration Administrator"), according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes ("AAA Rules"). To the extent that there is any variance between the AAA Rules and this Arbitration Agreement, this Arbitration Agreement shall control. Arbitrators must be members of the state bar where the arbitration is held, with expertise in the substantive laws applicable to the subject matter of the dispute. No arbitrator or other party to an arbitration proceeding may disclose the existence, content or results thereof, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation. The Parties agree that in this relationship: (1) The Parties are participating in transactions involving interstate commerce; (2) The Arbitrator shall decide any dispute regarding the enforceability of this Arbitration Agreement; and (3) This agreement and any resulting arbitration are governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code), and, to the extent any provision of that act is inapplicable, unenforceable or invalid, the laws of the state that govern the relationship between you and me (which, for purposes of this loan, is South Dakota). If any of the provisions of this Arbitration Agreement dealing with class action, class arbitration, private attorney general action, other representative action, joinder, or consolidation is found to be illegal or unenforceable, that invalid provision shall not be severable and this entire Arbitration Agreement shall be unenforceable.

3. **Rights Preserved** – This Arbitration Agreement does not prohibit you or I from exercising any lawful rights or using other available remedies to preserve, foreclose or obtain possession of real or personal property; exercise self-help remedies, including setoff and repossession rights; or obtain provisional or ancillary remedies such as injunctive relief, attachment, garnishment or the appointment of a receiver by a court of competent jurisdiction. All statutes of limitations applicable to any dispute apply to any arbitration between you and me. The provisions of this Arbitration Agreement shall survive termination, amendment or expiration of the loan relationship or any other relationship between you and me.

4. **Fees and Expenses of Arbitration** – Arbitration fees shall be determined by the rules or procedures of the Arbitration Administrator, unless limited by applicable law. I understand that I may check with the Arbitration Administrator to determine the fees applicable to any arbitration I may file. If the applicable law of the state in which I opened my account limits the amount of fees and expenses to be paid by me, then no allocation of fees and expenses to me shall exceed this limitation. I understand and agree that for purposes of the loan I receive under this Credit Agreement, I am opening such account in South Dakota. Unless inconsistent with applicable law, each of us shall bear the expense of our own attorney, expert and witness fees, regardless of which of us prevails in the arbitration.

**READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN RIGHTS, INCLUDING MY RIGHT TO PURSUE A CLAIM IN COURT AND MY RIGHT TO HAVE A JURY TRIAL.**

---

**CUSTOMER IDENTIFICATION POLICY NOTICE**

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

NON-NEGOTIABLE CREDIT AGREEMENT " THIS IS A CONSUMER CREDIT TRANSACTION
wellsfargo.com/student | 1-800-658-3567

Wells Fargo Education Financial Services is a division of Wells Fargo Bank, N.A.
© 2014 Wells Fargo Bank, N.A. Equal Opportunity Lender  (Rev. 05-2014)

*Wells Fargo Collegiate* Loan
Page 6 of 6